102 So.2d 4

John Will JORDAN, Jr.

v.

STATE of Alabama.

6 Div. 105.

Supreme Court of Alabama.

April 10, 1958.

Skidmore & Davidson, Tuscaloosa, for appellant.

**362**

John Patterson, Atty. Gen., and Wm. C. Younger, Asst. Atty. Gen., for the State.

GOODWYN, Justice.

Appellant, John Will Jordan, Jr., was indicted by the Grand Jury of Tuscaloosa County for breaking and entering into an inhabited dwelling in the nighttime, with intent to steal or commit rape (burglary in the first degree, Code 1940, Tit. 14, § 85, fixing punishment at death or imprisonment for not less than 10 years; Code 1940, Tit. 15, § 259, Form 29). The indictment was returned and filed in court on August 31, 1956. It consisted of two counts, Count I charging that Jordan "did in the nighttime, with intent to commit rape, break into and enter an inhabited dwelling house, the property of David White and Thelma White, which was occupied by Thelma White a person lodged therein," and Count II charging that he "did in the nighttime, with intent to steal or to commit rape, break into and enter an inhabited dwelling house, the property of David White and Thelma White, which was occupied by Thelma White, a person lodged therein, against the peace and dignity of the State of Alabama." At his arraignment on September 4, 1956, Jordan, being present in person and represented by counsel, for answer to the indictment, entered pleas of "not guilty" and "not guilty by reason of insanity," and the case was set for trial on September 12, 1956.

On the day set for al Jordan filed a plea in abatement to the indictment questioning the formation of the Grand Jury which returned the indictment. Thereupon, the state moved to strike the plea and also demurred to it. The motion to strike was granted and the demurrer was sustained. One of the grounds of both the motion and demurrer was that the plea came too late, being filed after Jordan's pleas in bar.

On conclusion of defendant's evidence he withdrew his plea of "not guilty by reason of insanity."

The jury found defendant guilty of "burglary in the first degree as charged in Count Two of the indictment" and fixed his punishment at 30 years' imprisonment in the penitentiary. Judgment was rendered and sentence imposed in accordance with said verdict. Defendant's motion to set aside the verdict and judgment and grant him a new trial was overruled.

■ A threshold question relates to the propriety of granting the state's motion to strike defendant's plea in abatement. The record does not disclose whether defendant, prior to filing his plea in abatement, sought the court's permission to withdraw his pleas to the merits. Nor is there any indication that the trial court took any action which might be considered as approval of the filing of the plea in abatement. As already noted, said plea was filed after defendant was arraigned and entered pleas of "not guilty" and "not guilty by reason of insanity." We find no reversible error in the trial court's action granting the motion to strike the plea in abatement. Code 1940, Tit. 15, §§ 278 and 279; Payne v. State, 261 Ala. 397, 403(2), 74 So.2d 630; Wimbush v. State, 237 Ala. 153, 155, 186 So. 145. See Owen v. State, 255 Ala. 354, 356–357, 51 So.2d 541; Maund v. State, 254 Ala. 452, 458, 48 So.2d 553; Whittle v. State, 205 Ala. 639, 641–642, 89 So. 43. Since the motion to strike was properly granted, there is no occasion to discuss the ruling on the demurrer.

■ The record discloses ample evidence to support the jury's verdict.

As one means of identifying the defendant with the burglary the state offered in evidence a pair of trousers belonging to defendant. Grease stains found on this article were identified by a state toxicologist as matching similar grease stains at the kitchen window of the burglarized residence. To overcome this evidence the defense called as a witness one Andrew Hanson, defendant's half-brother and with whom the defendant lived. The tendency of the evidence elicited from him was that the grease stains were acquired when he and defendant were at the complaining witness' house helping repair a television antenna on Thursday afternoon before the alleged burglary early Saturday morning (about 12:30 a. m.). During his direct examination he was asked how long the defendant had been living with him where they are now living. He answered, "somewhere around a year." On his cross-examination the following occurred:

"Q. Now, Andrew, you say John has been living with you about a year? A. Yes, sir.

"Q. As a matter of fact it has been less than a year, hasn't it? A. He has been off and on a year or a little over.

"Q. Where was he before then?

"Mr. Davidson: We object.

"The Court: Overruled.

"Mr. Zeanah: You went into it.

"Mr. Davidson: Except.

"A. He had gone home to Birmingham?

"Q. Birmingham? A. Yes, sir.

"Q. How long had he been living in Birmingham?

"Mr. Davidson: We object; incompetent, immaterial and irrelevant.

"The Court: Overruled.

"Mr. Davidson: Except.

"Mr. Zeanah: Cross examination.

"A. Off and on all his life.

"Q. Has he ever lived anywhere else besides Birmingham?

"Mr. Davidson: We object; incompetent, immaterial and irrelevant.

"The Court: Overruled.

"A. Not to my memory.

"Q. As a matter of fact he lived in Detroit until shortly before he came down here, didn't he?

"A. I don't know.

"Mr. Davidson: We object.

"Q. You don't know that? A. No, sir.

"Q. You don't know whether he was living in Detroit? A. No, sir.

"Mr. McKee: We object to arguing with the witness.

"The Court: Overruled.

"Mr. McKee: Except.

"Q. Have you kept up with him? A. No, sir.

"Q. Where was he living in Birmingham? A. With my father.

"Q. You know he was living with your father? A. For awhile.

"Q. Where was he living after he left your father's?

"Mr. Davidson: We object; incompetent, immaterial and irrelevant.

"A. Somewhere around there.

"Q. Where? A. I don't know.

"Mr. Davidson: We object.

"The Court: He said a little over a year, I believe.

"Q. How long has he been living with you? A. Little over a year.

"Q. What is a little over a year. Do you remember the date? A. No, sir.

"Q. You don't remember that? A. No, sir.

"Q. You sure he has been living with you over a year? A. Yes, sir.

"Q. As a matter of fact he has been in the Birmingham jail for the past year, hasn't he?

"Mr. Davidson: We object to that. Trying to prejudice the jury. He is trying to put something that isn't so in the record. Highly irregular and illegal.

"Mr. Zeanah: I am trying to find out whether this man is telling the truth.

"Mr. Davidson: Your Honor ruled that question wasn't allowed.

"Mr. Zeanah: His Honor said he was going to confine it to a year.

"The Court: Sustain the objection.

"Q. Has he been living with you for a year or more? A. Yes, sir.

"Q. Is it not a fact that during the past year, within the past year, he has been confined to the Birmingham jail?

"Mr. Davidson: We object to that.

"A. I couldn't swear that.

"The Court: Sustained.

"Mr. Davidson: You don't have to answer that.

"Mr. Zeanah: How else am I going to prove he is lying?

"Mr. Davidson: We object to that statement if the Court please. There is an attempt being made to prejudice the minds of the jury against the defendant. The remark is highly irregular and uncalled for.

"Mr. Zeanah: I have a right to impeach the witness.

"Mr. Davidson: We object to that statement and ask for a mistrial on the basis of the statement the solicitor made.

"The Court: Overrule the motion for a mistrial.

"Mr. Davidson: Except.

"The Court: Sustain the objection to the question and exclude that statement.

"Q. Are you positive he has been living with you for more than a year? A. Yes, sir.

"Q. When did he come to live with you? A. I don't know the date or month but I know it was over a year.

"Q. Do you know where he came from when he came to live with you?

"Mr. Davidson: We object.

"A. Yes, sir.

"Q. Where? A. Jefferson County.

"Q. As a matter of fact he didn't come to live with you from Jefferson County; he came to live with you from Detroit, didn't he?

"Mr. Davidson: We object, incompetent, irrelevant and immaterial. He is trying to prejudice the jury again.

"The Court: Overruled.

"Mr. Davidson: Except.

"A. I said Jefferson County."

■ It is insisted that prejudicial error was committed in overruling the defendant's objections during the foregoing colloquy and denying his motion for a mistrial. We cannot agree that the said rulings constitute reversible error. The scope and extent of cross-examination rests in the sound discretion of the trial court and such discretion will not be revised on appeal unless abused. Burgess v. State, 256 Ala. 5, 11, 53 So.2d 568; Kervin v. State, 254 Ala. 419, 421, 48 So.2d 204; Cox v. State, 162 Ala. 66, 68, 50 So. 398, 399. Considering the record as a whole, we do not think there was any abuse of sound discretion in the rulings upon the cross-examination. As said in Cox v. State, supra:

"* * * It is permissible upon a cross-examination, for the purpose of testing the memory, sincerity, etc., of the witness, to interrogate him as to matters wholly irrelevant to the issue in the case. The latitude and extent of such cross-examination, however, is a matter that must, of necessity, rest largely, if not exclusively, within the sound discretion of the trial court,

and, so long as that discretion is not abused, the action of the trial court will not be revised on appeal. * * *"

■ One of appellant's attorneys, in his argument to the jury, attempted to argue the absence of any fingerprint evidence being introduced by the state. The state's objection to this line of argument was sustained. Appellant insists that this was error to reverse. Introduced in evidence by the state was a knife, identified as belonging to the defendant, which was found the morning after the alleged burglary on the ground beneath a window of the burglarized house, the screen of the window having been cut. No evidence was introduced by either side as to the presence or lack of fingerprints on said knife or in the house. The insistence is that the presence or absence of such fingerprints was within the peculiar knowledge of the state, thus making the failure of the state to produce evidence of fingerprints a legitimate subject of argument to the jury.

Appellant, in support of his contention, relies on the following from Waller v. State, 242 Ala. 1, 3, 4 So.2d 911, 913:

"It is well settled in this jurisdiction, in harmony with the great weight of authority that if a party has a witness possessing peculiar knowledge of the transaction, and is supposed to be favorable to him, and fails to produce such witness when he has the means of doing so, this, in the absence of all explanation, is *a ground of suspicion against him that such better informed testimony would make against him. * * *"*

Here, there is no indication from the evidence that there was any attempt to secure fingerprints by any one, nor that the state had any unproduced witness having knowledge of such fingerprints. The state called as witnesses the investigating officers, including a state toxicologist, who were cross-examined by defense counsel. There was no mention of fingerprints in

such cross-examination. These investigating officers were the witnesses who most probably would be expected to know about the presence or absence of fingerprints, and whether an attempt was made to secure fingerprints. They were in court, available to defendant, and, as already noted, were actually examined by him. Under these circumstances, we do not think it was proper to argue that the state was withholding evidence of fingerprints from the jury. Jarrell v. State, 251 Ala. 50, 55, 36 So.2d 336; Waller v. State, supra; Forman v. State, 190 Ala. 22, 27, 67 So. 583.

Being mindful of our duty in cases of this kind (Code 1940, Tit. 15, § 389; Payne v. State, 261 Ala. 397, 402, 74 So.2d 630; Johnson v. State, 257 Ala. 644, 646, 60 So. 2d 818; Wesson v. State, 238 Ala. 399, 400, 191 So. 249), we have carefully examined the record to ascertain whether there is reversible error. Finding none, the judgment of conviction is due to be, and is, affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and COLEMAN, JJ., concur.