(No. 37920.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* PAULA BEIER, Appellant.

*Opinion filed November 26, 1963.*

ROBERT H. RICE, of East St. Louis, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and JOHN M. KARNS, JR., State's Attorney, of Belleville, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and FRANK M. RAIN, Assistant State's Attorney, of counsel,) for the People.

Mr. CHIEF JUSTICE KLINGBIEL delivered the opinion of the court:

Paula Beier was charged with the murder of her husband, under an indictment in the circuit court of St. Clair County. She was found guilty after trial by jury, and was sentenced to imprisonment for a term of not less than fourteen years nor more than fourteen years and one day. She appeals from this conviction and sentence, claiming that guilt was not proved beyond a reasonable doubt, that improper evidence was received, that defendant was unduly restricted in the examination of her character witnesses, and that the prosecutor improperly argued matters to the jury which were not based upon evidence.

The record shows that the deceased, Thomas Beier, was employed at a bowling alley in O'Fallon, Illinois. He took

care of the alleys in the evening and sometimes on Sunday. On Sunday afternoon, August 12, 1962, his wife Paula came to the bowling alley and had a conversation with him in the lounge or bar room of the establishment. The place was empty except for defendant and her husband. They talked about a paramour he had been seeing, and he became angry because defendant had complained to the girl friend about the affair. He kept telling defendant to go to his parents' home in Ohio for a few months.

After a while Beier got up and went outside to a cash register on the counter in the bowling alley, where a customer was waiting to pay money. He did not return to the table at which they had been sitting, and defendant started to look around for him. She went to the kitchen and that, according to her testimony, was the last she knew until she found herself calling for help at the window leading to the bowling alley.

Some time between four and four-thirty a group of teenage boys, who were out in the bowling alley bowling and playing a pinball machine, heard a sharp noise resembling the sound of a board falling on concrete. Shortly thereafter Mrs. Beier appeared at the window separating the alleys from the lounge or tavern room. Through an opening in the glass portion she shouted something to the boys which they did not understand, but they ignored her and went on with their playing.

A few minutes later the young men heard a similar sound, and Mrs. Beier reappeared at the window shouting "Help, please help!" This time they investigated, going into the kitchen with her. She had been wounded in the left side, and on the floor they saw Thomas Beier lying in the pool of blood. He had been shot in the area of his jaw, but was conscious. A .32-caliber revolver was on the floor near his head. One of the boys asked what happened, and Mrs. Beier replied that he shot her. This was denied by Thomas Beier, who said his wife had shot him.

An ambulance was called and the two were taken to a hospital where Thomas Beier subsequently died, presumably as a result of the wounds he had received. At the hospital defendant's hands were given a paraffin test to determine whether or not they had recently fired a weapon, but no attempt was made at the trial to introduce evidence of the results obtained, if any. The gun belonged to one of the owners of the bowling alley, and had been kept in a drawer in the kitchen.

Paula Beier, 34 years of age, testified in her own behalf, stating that she remembered nothing after she entered the kitchen, and had no recollection or knowledge of the shooting. She related a personal history of hardship and harrowing experience. She was born in Czechoslovakia. When she was about twelve years old her father was twice taken to a concentration camp by German soldiers. Within a year after her father's release the Russians entered her homeland, took her by force to a building several miles from her home, and placed her under guard with other captured girls and women. There she was raped several times by Russian soldiers and was witness to a brutal incident in which a young woman got out of a line to help her mother and was severely beaten on the head with the butt of a rifle by a Russian soldier. During the following year she was taken from place to place by the Russians, getting very little to eat and seeing people die from hunger and typhus. In 1946 she reached West Germany. She met Thomas Beier there in 1952, and they were married a few years later. Twice defendant became pregnant but each time she lost the baby. After coming to the United States the couple went to live with Beier's parents in Ohio. There she had to go to a hospital, where she was operated on and rendered sterile. Thereafter they moved from place to place, her husband being in military service. He soon began seeing other women, found fault with her for not giving him any children, and told her he was not coming home any more. In answer to a hypo-

thetical question based upon defendant's background and the events leading up to the shooting, a psychiatrist expressed the opinion that the assumed woman "by reason of complete mental shock, thereby had a complete loss of consciousness * * *".

The defendant contends, *inter alia,* that the court erred in permitting a witness to relate a so-called dying declaration of the deceased, and that such error was not obviated by a direction to the jury, at the close of the State's case, to disregard the conversation. A police officer testified that after Beier was taken to the hospital the witness was given permission to talk to him, and that in response to a question as to how he had received his injuries Beier replied his wife Paula had shot him. There was nothing to show that at the time of the interview Beier had been told he had a mortal wound, nor did it appear from any other circumstances that he thought he was going to die. In fact the officer on cross-examination testified the deceased gave no indication that he thought he was dying.

It is clear that the court erred in overruling defendant's objections to the testimony. The belief of the dying man that death is impending furnishes the guaranty of truthfulness which makes his declaration admissible in evidence. The rule is that such a declaration must be made under the fixed belief and moral conviction of the person making it that his death is impending and certain to follow almost immediately, without opportunity for repentance and in the absence of all hope of avoidance, when he has despaired of life and looks to death as at hand. (*People* v. *Maria,* 359 Ill. 231.) As this court said in the *Maria* case (p. 235), "In the first instance the court must be satisfied, beyond a reasonable doubt, that the statement was made *in extremis,* and unless it was so made it should not be allowed to go to the jury."

The statement testified to in the case at bar accused the defendant in so many words of having done the shooting,

and there is no way this court can determine the effect it had upon the minds of the jurors. Its admission was highly prejudicial, despite the fact that the jury was later admonished to disregard it. Nor can we accept the observation of the State that it was "merely cumulative" of his statement made at the scene of the shooting, and that its admission was therefore harmless.

Further complaint is made of the prosecutor's argument to the jury. Medical evidence on behalf of the State showed that the bullet had lodged in the body of the fourth cervical vertebra, causing pressure on the spinal cord at that particular place, and that upon being shot Thomas Beier immediately became paralyzed from the neck down. The chief of police testified, on cross-examination by defendant's counsel, that the gun found at the scene of the shooting was composed of material which would ordinarily pick up fingerprints from one handling it. He further testified, upon redirect examination, that prints could be readily wiped off such material. There was no testimony or other evidence, however, as to the actual presence or absence of fingerprints on the weapon, although it had been taken to the St. Louis police department to be checked for prints.

In the argument complained of the prosecutor commented that "no fingerprints could be found", and that "Paula Beier, we believe, did have the presence of mind at this time to use her skirt to wipe the fingerprints from that gun and to replace it." His closing address to the jury concluded as follows: "One other thing, ladies and gentlemen, which is the key to this whole case. Here is a man lying paralyzed on the floor after being shot. He can't wipe finger prints off this gun. He can't even move. There is the answer to this case and on behalf of the State, we submit to you that we are entitled to a verdict of guilty against Paula Beier of murdering her husband." Defendant's objections to this line of argument were overruled.

This argument, being based upon a mere assumption that

there were no fingerprints on the gun, was highly improper. There was no evidence whatever that the revolver bore no prints, much less that it had been wiped clean of them. Assumptions and statements of fact not based upon evidence in the case may not properly be argued to the jury, and under circumstances such as the present are prejudicial to the accused. *People* v. *Dukes,* 12 Ill.2d 334; *People* v. *Weitzman,* 362 Ill. 11; *People* v. *Rothe,* 358 Ill. 52.

We conclude that for the reasons stated the defendant did not receive a fair trial, free from prejudicial error. Since the cause must be remanded for a new trial it is unnecessary to discuss the sufficiency of the evidence and the other assignments of error. The judgment of the circuit court of St. Clair County is reversed, and the cause is remanded.

*Reversed and remanded.*