150 N.J. Super. 166 (1977)
375 A.2d 277
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ELEUTERIO PEREZ, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted April 26, 1977.
Decided May 17, 1977.
*168 Before Judges LYNCH, MILMED and ANTELL.
Mr. Stanley C. Van Ness, Public Defender of New Jersey, attorney for appellant (Mr. Edward A. Halpern, designated counsel, of counsel and on the brief).
Mr. Joseph P. Lordi, Essex County Prosecutor, attorney for respondent (Ms. Andrea R. Grundfest, Assistant Prosecutor, of counsel and on the brief).
PER CURIAM.
Defendant was convicted after a jury trial upon an indictment charging in the first count conspiracy to operate a lottery, N.J.S.A. 2A:98-1, and in the second count with knowingly working for a lottery, N.J.S.A. 2A:121-3(a). He was sentenced to four months imprisonment on the first count and placed on probation for two years on the second and ordered to pay a fine of $250.
Defendant's arrest followed an electronic surveillance of a number of telephones in Essex County for lottery activity *169 in January and February 1973. The evidence showed that on a number of dates during these months a party identifying himself as "Cenizo" spoke by telephone with another who was located at 571 Summer Avenue, Newark. During these calls he relayed a number of lottery bets and discussed lottery business. He had a distinctive high-pitched voice which was taped by the monitoring police detective. On November 22, 1974, pursuant to court order, defendant gave a voice exemplar to the prosecutor. Based on a comparison between the exemplar and the tape of a telephone conversation on February 3 the detective testified that the voices were the same. Both tapes were played in the presence of the jury which was free to test the officer's testimony by making its own comparison.
Testimony was also received that defendant was known in the neighborhood where the illicit activities were being carried on as "Cenizo," a Spanish nickname corresponding to "Whitey," used to describe one with ash or gray-colored hair. It was noted during the trial that the term was fairly descriptive of defendant. The proofs linking defendant with the sobriquet came in the form of reputation evidence gathered in conversations a police witness conducted with local residents on the street. The officer monitoring the wiretap also testified that he recognized defendant by his voice after the second telephone call as one he knew, although not by name, from working in the neighborhood. Opinion evidence was also received to the effect that, based on the foregoing data, defendant was a writer in an illegal lottery operation.
Defendant first contends that the trial judge erred in admitting his voice exemplar over objection and in permitting the monitoring detective to opine that the voice on the exemplar and that taped in the February 3 telephone conversation were the same. However, we are satisfied that the demonstration was not, as defendant urges, testimonial in nature and that it did not violate principles of fundamental fairness. State v. King, 44 N.J. 346, 356-357 (1965). Both the wiretapped call and the exemplar were in the Spanish *170 language and the jury was instructed that the purpose of the demonstration was to facilitate a comparison of the voices. The monitoring detective, although not qualified as an expert in voice identification, was competent to testify as to the results of his voice comparison. State v. Johnson, 138 N.J. Super. 579, 582 (App. Div. 1976), certif. den. 71 N.J. 340 (1976); Annotation, "Identification of an accused by his voice," 70 A.L.R.2d 995 (1960).
The voice exemplar of November 22, 1974 was made for the purpose of a spectrographic study. However, defendant's application for discovery with respect to the results thereof were denied by the trial judge. He was further precluded from commenting to the jury upon the failure of the State to offer any findings into evidence. Neither of these rulings constituted error. No scientific basis for the introduction of the spectrographic test results had been placed in the record, and the State's failure to offer these in evidence was not a proper subject of comment. Cf. State v. Andretta, 61 N.J. 544, 551 (1972). Furthermore, the prosecutor explained on the record his reason for not utilizing spectrographic evidence. These were (1) his belief that it was not required for the purposes of the trial and (2) the defendant's difficulty in reading certain transcripts as part of the test.
Defendant complains also as to the hearsay character of the testimony that he was known familiarly as "Cenizo." But evidence of reputation in a community is receivable as an exception to the hearsay rule. Evid. R. 63 (27) (c); State v. Siverly, 140 Wash. 68, 248 P. 69, 70 (Sup. Ct. 1926); 2 Wigmore on Evidence (3 ed. 1940), § 667(a) at 788. In State v. Deppe, 286 S.W.2d 776, 781 (Mo. Sup. Ct. 1956), a case involving a bookmaking trial, a police witness was permitted to testify that defendant was known as "Bud" where, in the course of a police raid in defendant's apartment, a number of telephone calls were taken in which the caller asked to speak with one known by that name. *171 In affirming the conviction the Supreme Court of Missouri reasoned:
* * * [a]n answer that one is known by a particular name is not objectionable on the ground of hearsay, nor is it a conclusion. The witness's answer is based on his knowledge, although knowledge acquired through hearsay. A person's name is the title by which habitually he calls himself and others call him, and though the source of information as to one's name may be hearsay, yet it is universally relied upon as a source of knowledge. [Emphasis in original]
Defendant's final point is that he was prejudiced by a reference in the testimony of a police witness to a prior appearance by defendant in municipal court after an arrest of an unspecified nature. It was received in the expectation that it would lead to the association of defendant with the nickname "Cenizo," but this did not materialize. When this became clear the trial judge vigorously and effectively instructed the jury to disregard what they had heard. The testimony was sufficiently innocuous so that, as far as the jury could determine, the arrest might have been, as the court explained in its instructions, for nothing more serious than a traffic violation or a charge of which he was innocent. Defendant's motion for a mistrial sought an extraordinary remedy which is granted only to prevent an obvious failure of justice. State v. Provoid, 110 N.J. Super. 547, 558 (App. Div. 1970). We find no abuse of discretion in the trial court's denial of the motion. Under the circumstances we are satisfied that the reference in the testimony was not "clearly capable of producing an unjust result." R. 2:10-2; State v. La Porte, 62 N.J. 312, 318 (1973); State v. Hubbard, 123 N.J. Super. 345, 351 (App. Div.) certif. den. 63 N.J. 325 (1973).
The judgment of conviction is affirmed.