# JONATHAN WAYNE ELEY *v.* STATE OF MARYLAND

[No. 109, September Term, 1979.]

*Decided September 16, 1980.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Thomas J. Saunders, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Stephen B. Caplis, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

COLE, J., delivered the opinion of the Court. MURPHY, C. J., and RODOWSKY, J., dissent. MURPHY, C. J., filed a dissenting opinion at page 556 *infra,* in which RODOWSKY, J., joins.

The question here is whether the trial court erred when it refused to allow defense counsel in closing argument to comment upon the lack of any evidence with respect to fingerprints on the escape vehicle allegedly used by the appellant.

Early in the evening on the date of the events in question, the appellant, Jonathan Wayne Eley, was involved in an altercation with several members of the family of Gary Johnson. A police officer was called to the scene and he dispersed the group and escorted Eley away from the area.

Approximately one hour later, while dancing outside the entrance of a bar near the scene of the altercation, Johnson was shot in each thigh. Moments later a car owned and driven by Ms. Ada Jones, a passerby, was taken from her at gunpoint and driven away by the robber. The next day the car was found abandoned but intact.

Several weeks later appellant was arrested and charged, among other things, with assault with intent to murder Johnson and robbing Ms. Jones of her car with a deadly weapon. Eley was tried by jury in the Criminal Court of Baltimore. Other than Ms. Jones, all identification witnesses were relatives of Gary Johnson. One testified that moments after the shooting, she saw the appellant in a car in front of the bar holding a rifle. A second testified that at the time of the shooting, she saw a "large guy running up the street with a rifle in his hand." A third testified that he actually saw the appellant shooting toward the bar. Ms. Jones was unable to identify the appellant as the one who

took her car. Eley denied having been present at the shooting and claimed that after the earlier confrontation with the Johnson family, he went home, packed his clothes, and moved in with friends.

The State neither listed nor presented any witnesses to discuss whether fingerprint tests had been performed on the Jones vehicle. No evidence whatsoever was presented that fingerprints were either present or absent.

Prior to defense counsel beginning closing argument, the court instructed:

> All right, Mr. Belsky, you may address the jury. I don't like to — I'm not going to interrupt either one of you if I can help it, but you gentlemen must confine yourselves to the facts you think you have proved and any reasonable inferences therefrom. If you get outside of that, I am going to cut you off.

During his argument defense counsel was proceeding as follows when the court interrupted:

> MR. BELSKY: We talked about the testimony of the Dorseys. We talked about all this testimony that was in. Let's talk about the evidence that didn't exist, that didn't happen. We talk about —
>
> THE COURT: You are treading on some dangerous ground, Mr. Belsky. We can be here for three months talking about what didn't happen.
>
> MR. BELSKY: Well, Your Honor — Your Honor, I want to —
>
> THE COURT: You are not going to get a chance to talk about what didn't happen. You must confine yourself to the arguments — your arguments about the evidence that existed.

At the conclusion of defense argument counsel requested to approach the bench and made the following objection:

> MR. BELSKY: Your Honor please —
>
> THE COURT: Yes sir.
>
> MR. BELSKY: — I believe it is proper evidence to

go into — a proper closing argument to go into there was no fingerprint evidence done to the car. I think that's covered in your instructions and I would like to note my objection on the record.

THE COURT: I don't think it is proper evidence to argue what wasn't. And you got your objection on the record and your objection is duly noted and your objection is overruled.

Appellant was found guilty and sentenced to the custody of the Commissioner of Correction. He appealed to the Court of Special Appeals which affirmed in an unreported per curiam opinion. *Eley v. State,* No. 1039, September Term, 1978, filed September 17, 1979. This Court then granted Eley's request for a writ of certiorari.

Eley contends that the trial court erred when it refused to allow defense counsel in closing argument to comment on the failure of the State to present fingerprint evidence with respect to the escape vehicle. He asserts that the trial judge went beyond limiting counsel from arguing facts outside the evidence. Rather he contends the trial judge improperly precluded counsel from arguing the logical inferences from the facts and *gaps* in that evidence.

In *Wilhelm v. State,* 272 Md. 404, 413, 326 A.2d 707 (1974), we addressed in some detail the permissible scope of closing argument. As a limitation we cautioned "that counsel should not be permitted by the court, over proper objection, to state and comment upon facts not in evidence or to state what he could have proven." *Id.,* citing *Esterline v. State,* 105 Md. 629, 66 A. 269 (1907). Our examination of the purposes and application of this limitation as well as a consideration of related situations in which comments upon a lack of evidence have been deemed proper leads to the conclusion that the trial court erred in finding the limitation applicable to the case at bar.[1]

---

**1.** We are aware that a number of other courts have reached a contrary conclusion Jordan v. State, 267 Ala. 361, 102 So. 2d 4 (1958); State v. Terry, 472 S.W.2d 426 (Mo. 1971); Commonwealth v. Wright, 255 Pa. Super. Ct. 512, 388 A.2d 1084 (1978); see Gannaway v. State, 142 Ga. App. 87, 235 S.E.2d 392 (Ct. App. 1977); cf. State v. Perez, 150 N.J. Super. 166, 375 A.2d

The broad purpose of the rule is to prevent counsel for either the prosecution or the defense from attempting to introduce to the jury matters which ought not to be considered in arriving at a determination of guilt or innocence. Proscribed are arguments which appeal to passion or prejudice and which "may so poison the minds of jurors that an accused may be deprived of a fair trial." *Wood v. State,* 192 Md. 643, 652, 65 A.2d 316 (1949); *Toomer v. State,* 112 Md. 285, 292-93, 76 A. 118 (1910); *cf. Contee v. State,* 223 Md. 575, 165 A.2d 889 (1960) (prosecutor's remarks during cross examination which were designed to incite racial prejudice against defendant).

The rule is designed also to prevent counsel from suggesting evidence which was not presented at trial thereby providing additional grounds for finding a defendant innocent or guilty. *See United States v. Garza,* 608 F.2d 659, 663 (5th Cir. 1979). Enforcement of the rule prevents abuses such as where the prosecutor may merely intimate that he knows of additional evidence of defendant's guilt which he did not present during his case, *e.g., United States v. Sawyer,* 347 F.2d 372 (4th Cir. 1965); *Thompson v. State,* 318 So. 2d 549 (Fla. Dist. Ct. App. 1975); *Annot.,* 90 A.L.R.3d 646 (1979), or where the prosecutor expressly argues that certain events did or did not happen when there is no evidence in the record to support such statements. For example, in *United States v. Latimer,* 511 F.2d 498 (10th Cir. 1975), a bank robbery case, there was testimony by two tellers that they had activated the bank's alarm and camera system during the robbery. Yet, during trial no films were introduced nor was any explanation given for the lack of production. In closing argument, the appellant's counsel pointed to this omission and argued the inference that the film was not produced because it did not identify appellant. In his rebuttal argument, the prosecutor responded that the films were not shown because the camera had malfunctioned. Objection by apppellant's counsel was overruled.

277 (1977) (failure of State to introduce results of spectographic study (voiceprints). In our opinion these cases represent a rigid application of the general rule.

On appeal the circuit court first stated that defense counsel's argument for an adverse inference was proper. It then held that the statements of the prosecutor were improper as they went outside the record and referred to facts which could not be proven. Moreover, such comments put the personal knowledge and belief as well as the credibility of the attorney on the line. For these reasons, the court reversed the conviction and granted a new trial. *Accord, People v. Beier,* 29 Ill. 2d 511, 194 N.E.2d 280 (1963).

Perhaps a more cogent reason for enforcing the rule is that arguments of counsel which are outside the record are improper because they allude to sources which are not subject to cross examination and cannot be tested for reliability. Permitting such arguments denies the defendant the right to confront his accusers.

Turning to the instant case, we find that permitting defense counsel to argue that the State's unexplained failure to produce fingerprint evidence should permit the adverse inference that the evidence would have been unfavorable to the State does not present the danger of the kinds of abuses which the rule is designed to prevent. First, the comments which the defense counsel sought to make were in no way designed to appeal to the passion or prejudices of the jury. More important, they were not intended as a statement of fact or calculated to serve the purpose of evidence. Rather, the excluded comments went to the strength of the prosecution's evidence or, more specifically, to the *lack of evidence.* It is the State which has the burden of producing evidence sufficient to convince the jury beyond a reasonable doubt that the defendant is guilty.

Here the only witnesses who identified Eley were relatives of the victim who, in light of the previous conflict between the victim's family and Eley, may have had a motive for fingering Eley as the assailant. The driver of the vehicle in question could not positively identify the appellant; however, the State had available to it a better method of identification — fingerprint evidence. This Court has taken judicial notice of the high degree of reliability accorded to

such identification. *Murphy v. State,* 184 Md. 70, 85-86, 40 A.2d 239 (1944); *see generally Reed v. State,* 283 Md. 374, 391 A.2d 364 (1978) where both the majority and dissenting opinions agree that fingerprint evidence is reliable. Yet the State failed to produce any such evidence and failed to offer any explanation for that failure. While it is not incumbent upon the State to produce fingerprint evidence to prove guilt, nevertheless, where a better method of identification may be available and the State offers no explanation whatsoever for its failure to come forward with such evidence, it is not unreasonable to allow the defendant to call attention to its failure to do so.

In the instant case, certainly, if fingerprints were impressed upon the automobile that evidence may have been available by appropriate testing. *See Mills v. State,* 3 Md. App. 693, 241 A.2d 166 (1968). Moreover, in light of the questions which can be raised regarding the identification of appellant, we cannot say that calling attention to the absence of fingerprint evidence was unimportant or cumulative.

Finally, we cannot conclude that such evidence, if available, was equally available to both sides. It is the prosecutor who has the facility through the police department to perform these tests. More important the prosecutor knows whether such tests were performed and what results were achieved. It would be plainly unreasonable to impose upon a defendant the burden of cross examining the police or of calling the appropriate personnel to the stand when that action might well result in evidence adverse to his interest. It is the State which has the burden of bringing forth the evidence. The defendant need say nothing.

We find support for our view in other jurisdictions. In *Jacobson v. State,* 551 P.2d 935 (Alaska 1976), appellant was convicted of operating a motor vehicle while intoxicated. At trial the police officer testified that appellant swayed and showed other signs of intoxication while attempting to perform sobriety tests. Although it was normal procedure to make a video tape recording of those charged with intoxication, no recording was made in this case. No

satisfactory explanation was offered for this failure. In closing argument appellant attempted to argue that the State had the ability to produce better evidence by the making of a tape recording and their failure to do so should permit the inference that the tape would not have been favorable to the State. This argument was foreclosed by the trial court. The Supreme Court of Alaska agreed with appellant's counsel and reversed the conviction. It said "[c]ounsel's argument concerning the reasons for the departure from normal practice was within the range of permissible argument." 551 P.2d at 941.

In *People v. Carter,* 73 Ill. App. 3d 406, 392 N.E.2d 188 (App. Ct. 1979), a robbery case, an identification of the two defendants was made immediately after arrest while both were handcuffed. There was no line up. The defendants were the only ones for the witness to choose. In closing argument, defense counsel remarked "[i]t is hardly a line-up. Shouldn't there have been a line-up?" In the course of reversing the conviction on other grounds, the court addressed the propriety of counsel's remarks:

> One can reasonably draw some adverse inference from the use of an inferior method when a superior [one] was readily available .... The defense here was discussing the evidence. Counsel never suggested that the police had done anything illegal, immoral, or improper, or anything else not in evidence. [329 N.E.2d at 192.]

We agree that, where there is *unexplained* silence concerning a routine and reliable method of identification especially in a case where the identification testimony is at least subject to some question, it is within the scope of permissible argument to comment on this gap in the proof offered.[2] Here, Eley sought to argue that the State had a

---

2. Our decision today must not be interpreted as an invitation to the prosecution in a criminal case to comment upon the defendant's failure to produce evidence to refute the State's evidence. Such comment might well amount to an impermissible reference to the defendant's failure to take the stand. Moreover, even if such a comment were not held tantamount to one that the defendant failed to take the stand it might in some cases be held to constitute an improper shifting of the burden of proof to the defendant.

reliable method of proving he was the assailant by introducing evidence of his fingerprints on the car. Since the State did not explain its failure to do so, he sought to establish the adverse inference, through argument of counsel, that his fingerprints were not on the car and, therefore he was not at the scene. This seems to us to be permissible argument particularly in light of the fact that Ms. Jones could not identify him as her assailant and that other witnesses may have been regarded as biased by the jury because of their relation to Johnson.

Under these circumstances we believe the limitation placed by the trial court on defense counsel's scope of argument constituted prejudical error and an abuse of discretion. Accordingly, we reverse.

> *Judgment of the Court of Special Appeals reversed and case remanded to that court with instructions to reverse the judgment of the Criminal Court of Baltimore and remand to that court for a new trial; costs to be paid by the Mayor and City Council of Baltimore.*

*Murphy, C. J., dissenting:*

The Court holds that the trial judge committed reversible error when he refused to permit the appellant to argue to the jury that the prosecution's failure to present fingerprint evidence at the trial supported an inference that he was not at the scene of the crime, and hence was not guilty of the offense charged. In so holding, I think the Court has unwisely departed from the salutary principle of *Wilhelm v. State,* 272 Md. 404, 413, 326 A.2d 707 (1974) that "counsel should not be permitted by the court, over proper objection, to state and comment upon facts not in evidence or to state

*Cf.* People v. Shannon, 88 Mich. App. 138, 276 N.W.2d 546 (Ct. App. 1979) (where defendant did not testify or offer any proof, the prosecution by commenting on the nonproduction of witnesses improperly shifted the burden of proof to the defendant.

what he could have proven." I therefore dissent from the reversal of the conviction in this case.

The only police officer called to testify by the prosecution was Officer Robert Shaffer, who arrested the appellant several weeks after the shooting. He was not asked about the existence or nonexistence of fingerprint evidence. Indeed, on cross-examination, it was brought out that Shaffer had not participated in the investigation of the crime.

The majority seems to assume that fingerprint evidence was available to the State and as a consequence the appellant was justified in arguing that a favorable inference arose as a result of the nonproduction of such evidence. The Court, after noting that the driver of the vehicle was unable to identify the appellant, says that "the State had available to it a better method of identification — fingerprint evidence." While acknowledging that "it is not incumbent upon the State to produce fingerprint evidence to prove guilt," the Court goes on to state that

> "where a better method of identification may be available and the State offers no explanation whatsoever for its failure to come forward with such evidence, it is not unreasonable to allow the defendant to call attention to its failure to do so."

The evidence in this case does not indicate that fingerprint evidence was available to the State. There was not a shred of evidence presented at the trial to indicate that fingerprint tests could have been made, should have been made, or were made upon the commandeered automobile. Since no such evidence was presented, one of the purposes behind the *Wilhelm* rule is clearly applicable, as recognized in the majority opinion, *i.e.,* "to prevent counsel from suggesting evidence which was not presented at trial thereby providing additional grounds for finding a defendant innocent or guilty."

Clearly, the appellant in closing argument intended to suggest that fingerprint evidence was available to the State and that although it was a more reliable method of identification than the State's eyewitness testimony, the

fingerprint evidence was withheld by the prosecution because it established that he was not at the crime scene. No such facts were in evidence to support such an inference and it was for this reason that the trial judge properly limited the scope of the appellant's closing jury argument under *Wilhelm.*

The Court is wrong, in my opinion, in concluding that

"It would be plainly unreasonable to impose upon a defendant the burden of cross examining the police or of calling the appropriate personnel to the stand when that action might well result in evidence adverse to his interest. It is the State which has the burden of bringing forth the evidence. The defendant need say nothing."

By this statement, the Court seems to suggest that the prosecution must explain its reason for not producing sources of potential evidence against an accused in order to prevent him from drawing favorable inferences from its nonproduction, while the defendant can remain completely silent. I do not believe that it is "plainly unreasonable" that a defendant has the burden of cross-examining a police officer to lay a foundation upon which to draw a favorable inference in closing argument if the matter has not been previously raised by the State. The better reasoned cases support this view.

In *Jordan v. State,* 267 Ala. 361, 102 So. 2d 4 (1958), the appellant attempted to use the fact of nonproduction of fingerprint evidence in his closing jury argument but the State's objection was sustained by the trial court. On appeal, the court affirmed, noting that no evidence had been produced at trial that an attempt to secure fingerprints had been made or that the State had failed to produce witnesses having knowledge of relevant fingerprint evidence, although the appellant could have cross-examined the investigating officers concerning the existence of fingerprint evidence.

In *Com. v. Wright,* 255 Pa. Super. Ct. 512, 388 A.2d 1084

(1978), the defendant in closing jury argument sought to use the fact that no fingerprint evidence had been produced at trial to support an inference that such evidence would have been exculpatory. The trial court sustained the State's objection on the ground that there was no factual basis to justify the inference although the accused could have cross-examined the investigating officers. Therefore, the accused's closing argument was improper because he was attempting to present matters to the jury that had not been placed into evidence. *See also United States v. Latimer,* 511 F.2d 498, 563 (10th Cir. 1975); *United States v. Wilkins,* 422 F. Supp. 1371 (E.D. Pa. 1976); *People v. Beier,* 29 Ill. 2d 511, 194 N.E.2d 280 (1963); *State v. McKinney,* 554 S.W.2d 488 (Mo. Ct. App. 1977).

A close reading of *Jacobson v. State,* 551 P.2d 935 (Alas. 1976), relied upon by the majority in support of its holding that the accused does not have the burden of cross-examining a police witness, supports the opposite principle. In that case, unlike the present case, Jacobson's trial counsel cross-examined the arresting officer and elicited from him the fact that although it was standard procedure to make video tapes of those charged with operating a motor vehicle while under the influence of intoxicating liquor, no such video tape had been made with respect to Jacobson. The arresting officer could only speculate why such a tape had not been made. Thus, the inference drawn by the accused in closing argument was not improper because he had established a proper foundation by his cross-examination of the arresting officer, as held by the Alaska court.

I think that the trial court's refusal to allow Eley to argue the lack of fingerprint evidence to the jury was a proper exercise of the trial court's discretion, and would therefore affirm the conviction.

Judge Rodowsky authorizes me to state that he joins in this opinion.