## BRUCE R. SPELL v. STATE OF MARYLAND

[No. 1600, September Term, 1980.]

*Decided July 10, 1981.*

The cause was argued before GILBERT, C. J., and THOMPSON and LOWE, JJ.

*Louis P. Willemin, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Stephen B. Caplis, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *James Maggio, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

LOWE, J., delivered the opinion of the Court.

Bruce R. Spell was convicted of robbery after being tried by a jury in the Criminal Court of Baltimore. He was tried jointly with Gloria Matthews after the two of them had been

arrested near the scene of a taxicab robbery. The arrest precipitously followed an immediate report by the victim and verbal description over the police radio. A prompt identification by the victim followed a confrontation upon apprehension.

Relying upon *Eley v. State,* 288 Md. 548 (1980), appellant contends that it was error to preclude his argument that a "lineup" should have been conducted. After arguing to the jury that the one-on-one confrontation was an overtly suggestive procedure, appellant commenced to point out that the police did not even test the identifying witnesses' reliability by requiring an identification from a lineup. The court sustained the state's objection to such an argument, reasoning that

> "There was no line-up in evidence. I will sustain the objection. There was no evidence. That was the evidence, there was no lineup."

Appellant responded that this was precisely what he was contending.

> "I understand, but I am commenting on why there should have been a line-up."

In other words, he was detracting from the reliability of what was done by pointing out what he believed should have been done.

*Eley, supra,* reversed a conviction, appellant points out, because Eley was precluded from arguing that the state's unexplained failure to produce fingerprint evidence should lead the jury to infer that the evidence would have been unfavorable to the State. The State contends that *Eley* was narrowly written to apply precisely to available fingerprint evidence in the absence of positive identification by a witness or other such reliable evidence. According to the State, the Court of Appeals carefully pointed out the factual absence of a positive identification and the unique fact that the Court had "taken judicial notice of the high degree of reliability accorded [fingerprint] identification." 288 Md. at 553-54.

Here there was a "show-up" confrontation identification uncontested by appellant. In contrast with "judicial notice of the high degree of reliability accorded" fingerprint identification by the Court in *Eley,* the State points to the express reluctance of that same Court to establish lineup identification as better than a prompt, quick show-up held under proper circumstances, which was the case before us. *See Foster & Forster v. State,* 272 Md. 273, 297-98, *cert. denied,* 419 U.S. 1036 (1974), quoting *Stanley v. Cox,* 486 F.2d 48, 54-55 (4th Cir. 1973). Indeed the Supreme Court itself is loathe to evaluate the comparative reliability of different types of eyewitnesses' identifications, notes the state, referring us to *Neil v. Biggers,* 409 U.S. 188, 200 (1972); and, it should be noted here that no testimony was offered on the relative reliability of either method as appears to have been done in the *Biggers* case.

While it is hard to conceive that *Eley* intended to apply a broad permit to all defendants to argue the absence of barely relevant investigating techniques unused (and perhaps unnecessary) either for apprehension or conviction, we are confronted with the fact that the role of the Court of Appeals (as opposed to our own) is a contemplative one writing primarily principles to guide bench, bar and litigants in the future rather than to decide cases narrowly restricted to their facts as is our wont. We are the court of direct appeal primarily to be concerned with the drawing of narrow lines dependent upon the issues presented by the litigants; theirs is the court responsible for writing instructively with a broad brush, prognosticating by principles espoused what we must apply to comparable factual settings.

Had the Court of Appeals meant *Eley* to have been restrictively decided upon so narrow an application as urged by the State, the Court could have remanded to us with instructions so to decide, or even decided the case by an unreported opinion. Indeed, if that were the Court's intent, it would not be too much to expect that the Court clearly would so indicate. To the contrary, however, the Court quoted with approval the very broad statement of policy

extracted from the Alaskan case of *Jacobson v. State,* 551 P.2d 935, 941 (1976):

> " '[c]ounsel's argument concerning the reasons for the departure from normal practice was within the range of permissible argument.' "

There can be little argument that this adopted concept was intended as a broad rather than a restrictive one.

Even if that were not so, the only other recited authority was directly on point with the factual issue before this court — comment upon absence of a line-up identification — *People v. Carter,* 73 Ill. App. 3d 406 (1979). After quoting from that case, the Court of Appeals concluded that

> "where there is unexplained silence concerning a routine and reliable method of identification especially in a case where the identification testimony is at least subject to some question, it is within the scope of permissible argument to comment on this gap in the proof offered." (Footnote omitted). *Eley, supra* at 555.

That is the message of *Eley.* Whether we agree with the majority or the distinguished dissent in that case, it is the Court of Appeals' role to espouse, and ours to apply, such rules. Because we may have reversed our roles in the past is no precedent that we do so with sufficient frequency to justify distinguishing rulings with which we may be uncomfortable. We note in passing that permitting such arguments conforms to the tradition of permitting substantial latitude to counsel in argument. If its relevance is questionable its effectiveness upon a jury may be diminished by a prosecutor in rebuttal. Without regard to its merit, the ruling set forth in *Eley* is conceptual and clearly applicable to the facts here.

Because we are reversing and will remand for retrial, we need not address the severance issue also raised (since appellant will be retried alone) or the jury sheet clerical correction at the bench, which hopefully need not recur. Nor

need we be concerned with the alleged violations of *Stevenson v. State,* 289 Md. 167 (1980), and *State v. Hutchinson,* 287 Md. 198 (1980), which appellant conceded had not been preserved. It will suffice to point to these recent cases for the edification of the court upon retrial.

We will, however, comment upon the court's instruction to the jury that presence at or near the scene of a crime is a "compelling element" in the proof of criminal agency. When commenting upon the considerations available to the jury, we admonish the judge to be more careful in using adjectives which may suggest undue weight to be given one element of consideration over another. While comment upon facts is permissible, the area is a dangerous one and recitations must be without suggestive emphasis.

> *Judgment reversed and case remanded for a new trial.*
>
> *Costs not to be reallocated.*
> *Md. Rule 1082 f.*