556 A.2d 289

**Lawrence LEGGETT, Jr.**

v.

**STATE of Maryland.**

**No. 1253, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

April 6, 1989.

Kathleen M. Brown, Assigned Public Defender, Towson (Alan H. Murrell, Public Defender, of Baltimore, on the brief), for appellant.

Richard B. Rosenblatt, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. and Stuart O. Simms, State's Atty. for Baltimore City, on the brief), Baltimore, for appellee.

Submitted before BISHOP, ROBERT M. BELL and FISCHER, JJ.

ROBERT M. BELL, Judge.

Lawrence Leggett, Jr., appellant, was convicted, following a jury trial in the Circuit Court for Baltimore City, of first degree murder and wearing and carrying a dangerous and deadly weapon. He was sentenced, for the murder conviction, to life imprisonment without benefit of parole,

pursuant to Maryland Code Ann. art. 27, § 643B [1] and to a concurrent three year sentence for the weapon's charge. He has appealed those judgments, presenting two questions:

1. Did the trial court erroneously limit appellant's cross-examination by prohibiting questioning on submission of appellant's blood sample for DNA questioning?

2. Did the trial court err in sentencing appellant to a term of life imprisonment without parole pursuant to Maryland Ann. Code art. 27, § 643B(c)?

We will affirm.

### 1

■ Prior to trial, the State obtained a court order permitting the DNA testing of appellant's blood to determine if it matched semen samples obtained from the victim.[2] Although two continuances were obtained pending the test results, when the results were finally received, they were inconclusive. The State, therefore, decided not to adduce evidence concerning the test and moved, *in limine*, to

---

1. Section 643B(c) provides:
   Any person who (1) has been convicted on two separate occasions of a crime of violence where the convictions do not arise from a single incident, and (2) has served at least one term of confinement in a correctional institutional as a result of a conviction of a crime of violence, shall be sentenced, on being convicted a third time of a crime of violence, to imprisonment for the term allowed by law, but, in any event, not less than 25 years. Neither the sentence nor any part of it may be suspended, and the person shall not be eligible for parole except in accordance with the provisions of article 31B, § 11. A separate occasion shall be considered one in which the second or succeeding offense is committed after there has been a charging document filed for the preceding occasion.

2. It is unnecessary that we set out in detail the facts surrounding the murder. Suffice it to say that the victim was discovered dead on the second floor landing of the apartment house in which appellant resided and that appellant was connected to the victim by his suspicious behavior when speaking with the police; spots of blood on his face and a stain on his boots; the presence of blood in his apartment; a woman's footprint and bootprint on his rug, which was rolled back; and an item of clothing belonging to the victim which was discovered in the trash in appellant's apartment.

prohibit the defense from doing so on cross-examination. Concluding that a *Frye–Reed*[3] analysis to establish the general acceptance in the scientific community of evidence of DNA testing is prerequisite to the admission of such evidence, the trial judge granted the motion *in limine*. This was done over appellant's objection. Appellant urged that the grant of the motion would unduly restrict his cross-examination. He also contended that, in any event, the *Frye–Reed* analysis is inappropriate when all that is sought to be elicited is the fact that tests were conducted by the State and that those tests then were not used by the State.[4] He relied upon *Eley v. State*, 288 Md. 548, 419 A.2d 384 (1980) and *Spell v. State*, 49 Md.App. 323, 431 A.2d 752 (1981).

He makes the same arguments on appeal. He fares no better here than he did below.

The State did not contend that the victim had been forceably raped or that it was the fact that appellant and the victim had engaged in sexual relations that ultimately led to the victim's death. Thus, the only relevance of the DNA testing would have been to establish whether appellant had contact with the victim, through sexual relations, within a short time of the victim's death. Such evidence, even if proved, would not prove the further fact that appellant killed the victim. Conversely, the evidence that it was someone other than appellant who engaged in sexual relations with the victim would not tend to prove that appellant did not kill the victim. Thus, it appears that the

---

3. *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923); *Reed v. State*, 283 Md. 374, 391 A.2d 364 (1978).

4. This argument's premise is questionable. *See Mitchell v. State*, 51 Md.App. 347, 353–54, 443 A.2d 651 (1982), in which we observed, in connection with the defendant's attempt to elicit evidence concerning the fact of the taking, as opposed to the results, of two polygraph examinations,

> [N]either the fact that a polygraph test was administered nor the results of the test should be admitted into evidence. To hold differently would encourage the indulgence by a jury in rank speculation to the detriment of either the State or the defense.

DNA testing results, even had they been conclusive, though relevant, would have been largely immaterial in this case. *See Dorsey v. State,* 276 Md. 638, 643, 350 A.2d 665 (1976).

Under the circumstances, neither *Eley/Spell,* nor the fact that appellant is not seeking to introduce expert testimony based upon DNA testing, can assist appellant. The Court of Appeals made clear in *Eley* that the defense could urge, through argument, that the jury draw an adverse inference from the State's failure to produce certain evidence "where there is *unexplained* silence concerning a routine and reliable method of identification especially in a case where the identification testimony is at least subject to some question". (Emphasis in original) 288 Md. at 555, 419 A.2d 384. Thus, a prerequisite to such an argument would appear to be that the test or method be "routine and reliable". In this case, not only is the DNA testing not a material "method of identification" because it would not prove or disprove criminal agency, but there is nothing in the record to suggest that DNA testing is "reliable". It is certainly not "routine". Accordingly, the trial court did not err in excluding the argument sought to be made by appellant.

■ Appellant contends that he is entitled to a remand for resentencing because the trial court failed to exercise its discretion, pursuant to Art. 27, § 643B(c), to impose a sentence other than life without parole. He submits that the trial court declined to impose an alternative sentence because it believed that it had no authority to do so. He argues, therefore, that he was illegally sentenced. More particularly, his argument is that:

[he] was not sentenced under either § 643B(b)[5] or

---

5. (b) *Mandatory Life Sentence.*—
   Any person who has served three separate terms of confinement in a correctional institution as a result of three separate convictions of any crime of violence shall be sentenced, on being convicted a fourth time of a crime of violence, to life imprisonment without the possibility of parole. Regardless of any other law to the contrary, the provisions of this section are mandatory.

§ 412(b) [6], either of which would clearly mandate life without parole. He did not fit the requirements for application of the former section and the State failed to provide proper notice for application of the latter. Under § 643B(c), appellant could have been sentenced to a term allowed by law, life no portions suspended with the first 25 years of the sentence to be served without parole. He relies upon *Williamson v. State*, 284 Md. 212, 395 A.2d 496 (1979).

When presented with this argument, the trial court commented:

The only exception contained in (c) is that in accordance with the provisions of art. 31B, § 11 which deals with release from Patuxent Institution, no part of the sentence may be suspended nor shall the person be eligible for parole. I am satisfied that that sentence or that proviso indicates to this Court that it refers to the sentence to be imposed in this case. The sentence is life imprisonment and my reading is that except for release from Patuxent Institution under § 11 of art. 31B, that the defendant shall not be eligible for parole for that life sentence. In this case, given that interpretation or that construction of the provision, it is the judgment of Court that the

---

**6.** (b) *Penalty for First Degree Murder—*
Except as provided under subsection (d) of this section, a person found guilty of murder in the first degree shall be sentenced to death, imprisonment for life, or imprisonment for life without the possibility of parole. The sentence shall be imprisonment for life unless: (1)(i) the State notified the person in writing at least 30 days prior to trial that it intended to seek a sentence of death, and advised the person of each aggravating circumstance upon which it intended to rely, and (ii) a sentence of death is imposed in accordance with § 413; or (2) the State notified the person in writing at least 30 days prior to trial that it intended to seek a sentence of imprisonment for life without the possibility of parole under § 412 or § 413 of this article.
Subsection (d), to which subsection (b) refers provides:
(d) *Court to Determine Possibility Of Parole.—*Except as provided by § 413 of this article, the court shall decide whether to impose a sentence of life imprisonment or life imprisonment without the possibility of parole.

defendant in this case be sentenced to the jurisdiction of the Commissioner of Correction for the balance of his natural life and that sentence is to be without the possibility of parole.

It is patent that the trial court did not refuse or fail to exercise discretion and further that it was correct in its interpretation of the statute. That this is so is demonstrated by reference to *Muir v. State,* 64 Md.App. 648, 498 A.2d 666 (1985), *aff'd,* 308 Md. 208, 517 A.2d 1105 (1986). There, this Court was called upon to interpret § 643B(c) in the context of a first degree sexual offense conviction. The question presented was whether a defendant, convicted of that offense, and sentenced pursuant to § 643B(c) had to be sentenced to life without the possibility of parole. We answered the question in the negative. Chief Judge Gilbert, writing for the Court, explained:

First degree sexual offenses are punishable by imprisonment "for no more than the period of his natural life." Maryland Ann.Code art. 27, § 464(b). While that section unambiguously prescribes a maximum penalty, it clearly does not require the imposition of a specific minimum punishment. It is possible, therefore, that a sentencing judge could, under § 464(b), impose an absolute minimum sentence and even suspend that. In any event, the point we stress is that § 464 contains no prescribed minimum sentence. It is precisely that type of statute that § 643B(c) was designed to meet. When § 643B(c) is applicable, the sentencing judge must impose a sentence of at least 25 years imprisonment, without the possibility of parole, and the judge may not suspend any portion of the term. Section 643B(c) prescribes a legislatively mandated *minimum* sentence.

We illustrate what the legislature intended § 643B(c) to accomplish. If an accused is convicted of robbery, the maximum penalty under the statute is ten years imprisonment. Maryland Ann.Code art. 27, § 486. Without the enactment of § 643B(c), any subsequent conviction could result, at most, in a ten year sentence. Section 643B(c),

when applicable, would, assuming compliance with the prior incarceration provision, dictate a sentence of 25 years, not merely ten years. Section 643B(c) enhances the punishment meted to habitual or repeat offenders. (Emphasis in original)

64 Md.App. at 662, 498 A.2d 666.

The Court went on to point out that, since, in the case of first degree sexual offense, the maximum penalty that could be imposed was life imprisonment, it was within the discretion of the court to determine whether it would impose § 643B(c)'s statutorily mandated minimum sentence or life imprisonment, § 464(b)'s maximum sentence. The situation is far different in the case *sub judice*. In this case, "the term allowed by law" is life imprisonment. Consequently, the trial court was required to sentence appellant to life imprisonment. Moreover, since "neither the sentence nor any part of it may be suspended, and the person shall not be eligible for parole ...", the court could only have imposed the sentence it did. From this, it follows that the trial court did not err.

JUDGMENTS AFFIRMED.

COSTS TO BE PAID BY APPELLANT.