550 A.2d 661

**Warren SAMPLE**

**v.**

**STATE of Maryland.**

**No. 110, Sept. Term, 1986.**

Court of Appeals of Maryland.

Nov. 30, 1988.

Nancy S. Forster, Asst. Public Defender (Alan H. Murrell, Public Defender, Melissa M. Moore, Asst. Public Defender, on the brief), Baltimore, for appellant.

Richard Rosenblatt, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., on the brief), Baltimore, for appellee.

Argued before ELDRIDGE, COLE, RODOWSKY, COUCH,* McAULIFFE and ADKINS, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals of Maryland (retired), Specially Assigned.

McAULIFFE, Judge.

In *Eley v. State,* 288 Md. 548, 419 A.2d 384 (1980), we held it was error to prohibit defense counsel from commenting on the unexplained absence of fingerprint evidence. In seeking to uphold the prohibition of similar comment in this case, the State argues that the holding of *Eley* must be restricted to cases involving questionable identification evidence. We shall not apply *Eley* so narrowly, and we reverse.

Warren K. Sample was tried before a jury in the Circuit Court for Baltimore City for wearing, carrying, or transporting a handgun in a public place, in violation of Article 27, § 36B of the Maryland Code (1957, 1987 Repl.Vol.). Two police officers and a firearms expert testified on behalf of the State. Sample did not testify or offer any evidence.

The State's evidence showed that during the early morning hours of January 12, 1985, Officer James Allen stopped a motor vehicle in the 1400 block of Carey Street in Baltimore City. Officer Allen said that he stopped the vehicle because the driver had made a right turn without giving an appropriate signal. The officer testified that as he followed the car and stopped it, he observed four male occupants, and that the three passengers had looked back at him "suspiciously." After the stop, Officer Allen focused his spotlight on the rear window of the vehicle, and observed movement by the passenger in the right front seat which suggested to the officer the possibility that the passenger

---

* Couch, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

was pushing something on the floor of the car. Officer Allen called for assistance, and when Officer S. Thrasher arrived, the two officers approached the stopped vehicle.

Officer Allen went to the right front door, and asked the passenger in the front seat, whom he later identified as Sample, to step out. Officer Allen testified that as Sample got out, he held a three-quarter length leather coat draped over his arm. Allen said Sample took one step toward him, then turned, dropped the coat and began to run, brushing by Allen and knocking him off balance. Allen pursued Sample to School Street and then to Pennsylvania Avenue. As they were running onto School Street, the officer observed Sample's right arm move upward, and simultaneously observed a gun hit the street. Allen continued the chase, using a portable radio to alert other officers whom he knew were conducting a surveillance in the area. Officer Yellow Thunder was on Pennsylvania Avenue when she heard Officer Allen's call. She observed Sample running toward her, with Allen in pursuit, and was able to stop Sample. Officer Allen then placed Sample under arrest, and remained with him until a police wagon arrived. Allen testified that he then retraced his steps to School Street, where he recovered a fully loaded .357 magnum pistol at the point he had earlier seen a gun dropped or thrown by Sample. Returning to the place where the vehicle had been stopped, Allen then searched the coat which had been dropped by Sample, finding 18 bullets in a pocket.

A firearms expert testified that the handgun was capable of being fired, and that all of the bullets recovered by Officer Allen could be fired from it.[1]

Sample's strategy at trial is readily apparent from a reading of the record. He made no attack upon the adequa-

---

1. Officer Allen testified that he recovered six bullets from the pistol, and 18 from the coat. Of these, 21 were .357 caliber, and three were .38 caliber. Because Officer Allen had not kept the bullets separate when he recovered them, he did not know which came from the pistol and which from the coat.

cy of the evidence identifying him as the person who alighted from the stopped vehicle, and who was thereafter involved in the chase and the ultimate stop by Officer Yellow Thunder. Rather, he argued that the State had not proven beyond a reasonable doubt that he had ever possessed the .357 magnum. In his opening statement to the jury, Sample's attorney said:

> [T]he gun was not recovered off my client and evidently there is suspicion that it was my client's gun—all of a sudden bullets appear out of his coat. Why didn't the State say anything to establish beyond a reasonable doubt to you that my client had those items?

He then told the jury that they would hear evidence that the State could have taken fingerprints, and admonished the jurors to "remember the holes in the State's case."

Sample's attorney undertook to impeach Officer Allen's testimony by showing that the officer had previously stated in his report that he recovered the bullets from the left pocket of the coat, although his testimony was that he recovered them from the right pocket, and that although he had testified he was "brushed back" and thrown off balance by Sample, Allen had made no mention of contact with Sample in his detailed application for a statement of charges. Through the report of the firearms expert, Sample's attorney was able to show that the pistol was registered to someone other than Sample. Sample's attorney also brought out that there was no identification in the coat linking it to Sample, and that Sample had never been seen in the coat or asked to try it on.

In his closing argument, Sample's attorney pointed to the inconsistencies and deficiencies he believed present in the evidence. He pointed out that the chase occurred at night, and that the officer claimed to have seen a gun dropped or thrown while he was some 20 feet behind Sample. The following then occurred:

> Defense Attorney: ... I would say that if the State wanted to prove its case beyond a reasonable doubt and to a moral certainty, they would have taken this very

little item here [referring to the pistol] and gotten finger-
prints from it.

Prosecutor: Objection, never asked in evidence.

The Court: Sustained.

Defense Attorney: May we approach the bench?

The Court: No.

Defense Attorney: They have a right to produce it and
get fingerprints.

Prosecutor: Objection.

The Court: Sustained.

Defense Attorney: There is a case on point, Your Honor.

The Court: I am aware of the case, it doesn't apply to
these circumstances.

Sample was convicted and sentenced to two years imprison-
ment. He appealed, and the Court of Special Appeals
affirmed in an unreported opinion. We granted Sample's
petition for a writ of certiorari.

■ It is certainly true, as the State argues and as the
Court of Special Appeals noted, that the facts of *Eley v.
State, supra,* disclosed a questionable case of identification.
It is equally true that the facts of this case present no
significant question or dispute concerning identification of
the defendant. But that difference is not dispositive. As
we pointed out in *Eley,* when the State has failed to utilize a
well-known, readily available, and superior method of proof
to link the defendant with the criminal activity, the defend-
ant ought to be able to comment on the absence of such
evidence.

[W]e find that permitting defense counsel to argue that
the State's unexplained failure to produce fingerprint
evidence should permit the adverse inference that the
evidence would have been unfavorable to the State does
not present the danger of the kinds of abuses which the
rule is designed to prevent. First, the comments which
the defense counsel sought to make were in no way
designed to appeal to the passion or prejudices of the

jury.  More important, they were not intended as a statement of fact or calculated to serve the purpose of evidence.  Rather, the excluded comments went to the strength of the prosecution's evidence or, more specifically, to the *lack of evidence*.  It is the State which has the burden of producing evidence sufficient to convince the jury beyond a reasonable doubt that the defendant is guilty.  (emphasis in original).
*Eley v. State*, 288 Md. at 553, 419 A.2d 384.

The State argues that because no testimony was offered to contradict the testimony of Officer Allen that Sample threw or dropped the gun, Sample should not be permitted to suggest the absence of fingerprint evidence. That argument is akin to saying that because the State's evidence is strong, the defendant cannot suggest that it is deficient, i.e. has "holes" in it.  Moreover, the State's argument suggests that a defense attorney may not compare and contrast very strong evidence, such as fingerprint evidence, with the evidence presented in a given case, when discussing what properly should be considered proof beyond a reasonable doubt.  We do not agree with the State's argument.

Even though Officer Allen's testimony was not directly contradicted by another witness, that does not mean it was unchallenged.  By his cross-examination of the officer, and in his opening statement as well as his closing argument, Sample's attorney made it abundantly clear that he was challenging Officer Allen's assertion that a gun had been dropped by Sample, or that any bullets were found in a coat pocket, or that if bullets were so found, the coat was shown to have been Sample's.  The jury was under no obligation to believe every fact testified to by Officer Allen, even though his testimony was not directly refuted by another witness. We may think the State's evidence was quite strong, as did the trial judge, but it is the jury who must evaluate the officer's credibility and determine what actually occurred.

Under the circumstances, we conclude that Sample should have been permitted to comment upon the unexplained [2] absence of fingerprint evidence.

■ In ruling as he did, the trial judge may have accepted the ground for objection advanced by the prosecutor—that the defendant was precluded from arguing the absence of fingerprint evidence because he had not inquired about such evidence during trial. We said in *Eley,* however, that the defendant has no such burden.

> It would be plainly unreasonable to impose upon a defendant the burden of cross examining the police or of calling the appropriate personnel to the stand when that action might well result in evidence adverse to his interest. It is the State which has the burden of bringing forth the evidence. The defendant need say nothing. *Eley v. State,* 288 Md. at 554, 419 A.2d 384.

The prohibition of comment on the absence of fingerprint evidence in this case was error, and we reverse.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY, AND TO REMAND THE CASE TO THAT COURT FOR A NEW TRIAL. COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.

------

2. We do not suggest that the explanation must always be explicit in order to justify limitation of argument. When the surface supposedly touched is such that a trial judge may judicially notice the fact that fingerprints could not be obtained from it, and the record demonstrates the basis for the judge's decision, a defendant may be precluded from arguing that an inference of favorable fingerprint evidence may be drawn from the State's failure to introduce any fingerprint evidence. Even in such a case, however, the defendant would not be precluded, in arguing the meaning of proof beyond a reasonable doubt, from generally contrasting the quality of fingerprint evidence or other highly reliable evidence with the quality of the evidence presented in the case.