508

49 A.3d 841

**Kasedaa SAMBA**

v.

**STATE of Maryland.**

**No. 1895, Sept. Term, 2010.**

Court of Special Appeals of Maryland.

June 28, 2012.

Reconsideration Granted in Part Aug. 31, 2012.

510

Katherine P. Rasin (Paul B. DeWolfe, Public Defender, on the brief) Baltimore, MD, for appellant.

Sarah Page Pritzlaff (Douglas F. Gansler, Atty. Gen., on the brief) Baltimore, MD, for appellee.

Panel: MEREDITH, WOODWARD and CHARLES E. MOYLAN, JR. (Retired, Specially Assigned), JJ.

WOODWARD, J.

Following a jury trial in the Circuit Court for Prince George's County, Kasedaa Samba, appellant, was convicted of transporting a handgun on a roadway, possessing a regulated firearm after conviction of a disqualifying crime, driving an unregistered vehicle, failing to display two registration plates, driving without a license, and driving an uninsured vehicle. Appellant was sentenced to three years, with all but eighteen months suspended, plus three years of supervised probation,

for transporting a handgun on a roadway. Appellant was also sentenced to five years, with all but eighteen months suspended, plus three years of supervised probation, for possessing a regulated firearm after conviction of a disqualifying crime, to be served concurrently with the first sentence. Sentences on the vehicle offenses were suspended generally.

In this appeal, appellant challenges his handgun convictions, raising the following two questions for our review:

I. Did the court err in instructing the jury that there is no legal requirement that the State utilize any specific investigative technique or scientific test to prove its case?

II. Is the evidence sufficient to sustain appellant's convictions for transporting a handgun on a roadway and possession of a regulated firearm after conviction of a disqualifying crime?

Applying lessons from the Court of Appeals' recent decisions in *Atkins v. State,* 421 Md. 434, 26 A.3d 979 (2011), and *Stabb v. State,* 423 Md. 454, 31 A.3d 922 (2011), we shall hold that in the circumstances presented here, the trial court erred in giving a so-called "anti-CSI effect" jury instruction. Because (1) there was no defense "overreaching" warranting such an instruction as a curative measure, (2) the trial court failed to instruct the jury to consider the lack of forensic evidence in evaluating reasonable doubt, and (3) the State used the instruction to undermine appellant's legitimate "failure to fingerprint" defense, appellant's weapons convictions must be reversed.

## FACTS AND LEGAL PROCEEDINGS

At trial, it was undisputed that a loaded and operable revolver was found underneath the seat of the car that appellant was driving when he was arrested on November 12, 2009. The State presented testimony by Prince George's County Police Officer Phillip Martin that, while patrolling the parking lot of a Forestville apartment complex that evening, he stopped appellant's Mitsubishi 3000 GT because it did not have

a front license plate. Appellant was driving and had a passenger in the front seat. The officer obtained Maryland identification cards from appellant and his passenger, then asked appellant to move his vehicle into a parking space. As appellant was backing his car into a spot next to a larger vehicle, Officer Martin lost sight of appellant's vehicle for approximately fifteen seconds. The officer then discovered that the passenger had left the scene.

Because appellant did not have a driver's license, proper vehicle tags, current vehicle registration, or proof of vehicle insurance, his vehicle was impounded. During an inventory search, Officer Martin reached underneath the driver's seat from the back seat and found a silver revolver "jammed up towards the middle toward the front of the seat." The handgun was loaded with five bullets, and test-firing later established that it was operable.

Appellant's defense to the weapons charges was that his passenger was merely a "neighborhood" acquaintance to whom he was giving a ride in exchange for gas money, and that it was the passenger who, "unbeknownst" to appellant, put the handgun under the driver's seat before he "bailed out." Appellant asserted that, because he did not know about the gun, he did not have the *mens rea* necessary to convict him of either possessing the weapon after conviction for a disqualifying crime or knowingly transporting the gun on a public roadway.

In his opening statement, defense counsel asked the jury to "please consider not only what evidence the State shows you, but what evidence is missing. I think there's going to be quite a bit missing in this case." During Officer Martin's cross-examination, defense counsel elicited testimony that, although the police department has technicians who can recover and analyze fingerprint and DNA evidence and appellant's fingerprints were available following his arrest, Officer Martin did not conduct or request any such testing on the gun or bullets. On re-direct, Officer Martin explained that police policy did

not require fingerprinting or DNA sampling of firearms and that it was not his "common practice" to do so.

At the State's request and over appellant's objection, the trial court, in its instructions to the jury before closing arguments, advised the jury as follows:

> **During this trial you** have heard testimony of witnesses and **may hear arguments of counsel that the State did not utilize a specific investigative technique or scientific test.** However, **I instruct you that there is no legal requirement that the State utilize any specific investigative technique or scientific test to prove this case.** Your responsibility as jurors is to determine whether the State has proven **based solely on the evidence presented** the defendant's guilt beyond a reasonable doubt.

(Emphasis added).

In closing argument, the State repeatedly invoked this jury instruction. The prosecutor, after emphasizing the significance of the evidence that the gun was found in appellant's vehicle under his seat, addressed the lack of fingerprint or DNA evidence to connect appellant to the gun. The prosecutor stated:

> You heard in the defendant's cross examination of the State's witness this business about fingerprints. You take fingerprints? Did you recover DNA? Well, the Officer told you and **you also heard from the Judge telling you that the State is not required to use any specific scientific investigative technique. The Officer doesn't have to. He's not required by law** or his police department policy **to fingerprint the gun.**
>
> **He's not required to recover DNA. That's something that you watch on TV, but on the date today, it's not required and it's not done.** He said I never recovered DNA or fingerprints from the gun. He doesn't do that. **Nor in the instructions that you heard from the Judge, you don't hear one of those instructions that says we have to produce any fingerprint evidence in order for**

**you to find him guilty.** There's no element of the offense that says that that's something that we have to do.

(Emphasis added).

Defense counsel, at the end of appellant's closing argument, acknowledged the jury instruction but asked the jury to conclude that the State should have performed fingerprint tests on the weapon as a matter of "fairness."

Now, the fingerprints, the DNA. Let's think about that for a minute. **The Judge has said that as a matter of law the State is not required to show you fingerprints, but I think it's just as an element of fairness you ought to require the State to show you fingerprints.** The State is saying to you in effect [appellant] knew that gun was there. [Appellant] put that gun there by inference. **Well, why don't you require, and I think you should, the State could do a very simple thing. Test the gun. Test the bullets for fingerprints. See if there's any proof at all that [appellant] ever handled that gun.** There is no such proof. And I think what you ought to require of the State, but **you ought to require of the police before you convict someone of a serious crime is proof, which is readily obtainable, and it is there. It's something that they can certainly bring here. They don't even bother to do that.** The gun was under the seat so that means it's him. I think you ought to require those things.

(Emphasis added).

In its rebuttal closing, the State again invoked the "anti-CSI effect" instruction to counter appellant's "missing evidence" defense. At the outset, the prosecutor argued:

**I'll just start since it's the last point that was made in saying that you are required to apply the law. You're not allowed to make up your own sense of what the law is in this case.** You were selected as jurors in this case because when the Judge asked you as part of voir dire whether you would be able to apply the law that he gave you, you indicated that you would be able to apply the law. **Not some magical theory or defense theory or interpreta-**

tion of the law, but what the law is. And the Judge already told you that the State as a matter of law, is not required to produce fingerprints or DNA evidence. Let me get that out of the way. It's not required.

(Emphasis added). Later, the State concluded by re-emphasizing the jury's obligation, when determining whether appellant had the requisite knowledge of the gun, to apply "the law that you've heard," "[n]ot this magical thing that you are pulling out of the air."

We shall add facts as they pertain to our discussion of the issues raised by appellant.

## DISCUSSION

### I.

### The "Anti–CSI Effect" Jury Instruction

Appellant argues that "[t]he trial court erred in instructing the jury that there is no legal requirement that the State utilize any specific investigative technique or scientific test to prove its case." Because an understanding of the evolving jurisprudence regarding the use of such "anti-CSI effect" jury instruction is essential to our resolution of this appeal, we shall examine first the trilogy of Maryland cases on this topic: *Evans v. State*, 174 Md.App. 549, 922 A.2d 620, *cert. denied*, 400 Md. 648, 929 A.2d 890 (2007), *Atkins v. State*, 421 Md. 434, 26 A.3d 979 (2011), and *Stabb v. State*, 423 Md. 454, 31 A.3d 922 (2011).[1]

We shall set the stage for our discussion by addressing the origin and purpose of an "anti-CSI effect" jury instruction. The term "anti-CSI effect" as applied to jury instructions

---

1. When appellant was tried in July 2010, the only case addressing the propriety of an "anti-CSI effect" jury instruction was *Evans*. During the pendency of the instant appeal, the Court of Appeals issued *Atkins* and *Stabb*. A holding of the Court of Appeals applies, *inter alia*, to "all other pending cases where the relevant question has been preserved for appellate review." *State v. Daughtry*, 419 Md. 35, 77 n. 26, 18 A.3d 60 (2011) (citation and quotations omitted).

stems from "[t]he popularity of forensic dramas" on television, including the program *CSI: Crime Scene Investigation* and its spin-off progeny. *Atkins*, 421 Md. at 457–58, 26 A.3d 979 (Harrell, J., concurring). Judge Harrell stated in his concurring opinion that these forensic investigation programs have

garnered increased media attention in recent years, with speculation that the shows produced a "CSI effect" that may skew jury verdicts, most frequently in criminal law matters. The theory behind the so-called "CSI effect" is that the millions of viewers of forensic dramas develop unrealistic expectations about the availability and results of specific scientific forensic techniques, such as DNA sequencing, fingerprint analysis, and ballistics analysis, increasing the likelihood of a finding of "reasonable doubt" where such forensic evidence is not produced, and, thus, an increased likelihood for an acquittal or hung jury.... Although debate continues regarding whether a "CSI effect" actually exists, among researchers that believe it does, the actual effect on jurors in the courtroom is a subject of great debate.

*Id.* at 458–59, 26 A.3d 979 (Harrell, J., concurring) (citations and footnote omitted). *See generally Stabb*, 423 Md. at 467–70, 31 A.3d 922 (reviewing published studies, articles, and cases considering the "CSI effect").

"Despite the divergence" among those studying the issue, there is no question that "the so-called 'CSI effect' is injected into American jurisprudence and has led to changes in model jury instructions, in prosecution tactics, and in both voir dire questions and jury instructions given by judges." *Atkins*, 421 Md. at 461, 26 A.3d 979 (Harrell, J., concurring) (footnote omitted). Among the "defensive prosecution techniques" designed "to curb the possible 'CSI effect'" are requests for "specialized jury instructions" like the one challenged in this appeal. *See id.* at 462, 26 A.3d 979 (Harrell, J., concurring). Such instructions have been referred to variously as "anti-CSI effect," "no duty," and "investigative or scientific techniques" instructions. *Id.* at 437, 26 A.3d 979; *id.* at 456 n. 1, 26 A.3d 979 (Harrell, J., concurring).

*Evans v. State*

The first case to emerge in this area was this Court's opinion in *Evans*. Evans and a co-defendant were convicted of selling heroin to an undercover police detective, who was the State's sole witness to the transaction. 174 Md.App. at 552–53, 555–56, 922 A.2d 620. On cross-examination, the detective testified that, although the police department had audio and video recording equipment available to record potentially illegal drug transactions, he did not arrange for his transaction with appellant to be recorded because he did not have authority to order the use of the recording equipment. *Id.* at 556, 922 A.2d 620. The trial court gave the following "anti-CSI effect" jury instruction just before closing arguments began:

> During this trial, you have heard testimony of witnesses and may hear argument of counsel that the State did not utilize a specific investigative technique or scientific test. You may consider these facts in deciding whether the State has met its burden of proof. **You should consider all of the evidence or lack of evidence in deciding whether a defendant is guilty. However, I instruct you that there is no legal requirement that the State utilize any specific investigative technique or scientific test to prove its case.** Your responsibility as jurors is to determine whether the State has proven, based on the evidence, the defendants' guilt beyond a reasonable doubt.

*Id.* at 562, 922 A.2d 620 (emphasis added). Thereafter, defense counsel for both Evans and his co-defendant argued in closing that the State's failure to present either recorded evidence of the transaction or fingerprint evidence created reasonable doubt.[2]

---

2. Evans' counsel argued:

> Now, one factor in this case is whether or not there are any cross-checks of reliability. Cross-checks of reliability means that apart from the testimony of one officer who is telling you what he claims happened, are there any other cross-checks of reliability? Well, we know in this case that there is no video of this event, no surveillance tapes of this event. There were questions asked of the detective

On appeal, Evans challenged the jury instruction on the ground that it improperly "relieved the State, in the minds of the jurors, of the burden to establish guilt beyond a reasonable doubt." *Id.* at 562, 922 A.2d 620. Noting the dearth of "appellate attention" given to the common defense strategy of "point[ing] to evidence not offered by the State," including "the lack of fingerprint evidence," this Court concluded that, although Evans failed to preserve his reasonable doubt objection for appellate review, the challenged instruction was "not substantially different in substance from" an instruction affirmed by the Second Circuit in *United States v. Saldarriaga*, 204 F.3d 50 (2d Cir.2000). *See Evans*, 174 Md.App. at 552, 562, 566, 570, 922 A.2d 620.[3] We observed that "[i]n both

---

whether that may have been a possibility, could have broken out a video camera, worn an audio, was it available. I think that could have been done. It wasn't done here.

*Evans v. State*, 174 Md.App. 549, 563, 922 A.2d 620, *cert. denied*, 400 Md. 648, 929 A.2d 890 (2007). He also pointed to "the lack of any video surveillance evidence" to corroborate the detective's account as grounds to question his credibility. *Id.* at 563, 922 A.2d 620.

Counsel for Evans' co-defendant also reiterated the "cross-checks" defense in arguing that there was no corroborative evidence to bolster the detective's credibility, reminding that jury that

Detective Bradley said, "Well, you know, we have the stuff, but my particular unit didn't have it. We would have to ask the sergeant, or the sergeant would have to ask somebody else." And I said, "Well, how tough is that?" And he said, "Well, you would have to ask my sergeant," . . . . I[t] strikes me that if you've got the equipment, you use the equipment. You have a situation where there are absolutely no scientific tests that implicate my client in any way. There's no audio. There's no video. There's no fingerprints. There is nothing.

*Id.* at 563–64, 922 A.2d 620.

3. The jury instruction approved in *Saldarriaga* was, in relevant part:

And then we heard a lot about the government's techniques. You remember I kept telling defense counsel that was irrelevant, and he kept on talking about techniques nonetheless.

Now, I kind of chastised him, and the fact that I chastised him, again, had nothing to do with anything. That just shows I never was a very patient person and old age hasn't improved me on that. It is nothing to hold against him that he insisted on making the arguments even though I told him they were irrelevant.

But now I will tell you why they are irrelevant. The law is clear that the government has no obligation to use any particular techniques. The government's techniques [are] not on trial here. **The**

instances ... the court's instructions made clear that the State was not relieved of its burden to establish guilt beyond a reasonable doubt." *Id.* at 570, 922 A.2d 620.

This Court concluded that the instruction given in Evans' trial

was a correct statement of the law, was applicable to the facts in the case and was not fairly covered by other instructions given. **The robust and vehement closing arguments of counsel regarding the failure to employ audio or video surveillance equipment and the lack of any other investigative or scientific evidence produced by the State warranted giving the instruction.**

\* \* \*

In sum, we are satisfied that the State's burden in this case was in no way compromised by the admonition that there was no responsibility, in law, for the State to produce evidence simply because it was available, even though such

---

government has no obligation to use all the possible techniques that are available to it. The government's function is to give enough evidence to satisfy you beyond a reasonable doubt that the charges are true, and the fact that there are a thousand [ ] other things they could have done is wholly irrelevant.

However, if suggesting things that they could have done leads you to think, well, maybe I have a reasonable doubt because I didn't have any evidence on that subject, if that happens, why, then, of course, that is a reasonable doubt like anything else.

*United States v. Saldarriaga,* 204 F.3d 50, 52 (2d Cir.2000) (emphasis added) (alterations in original).

The Second Circuit held that the district court's
jury instruction concerning the government's failure to use certain investigative techniques ... may have been somewhat chatty, but it was, in substance, legally sound. **The Court properly charged the jury to base its decision on the evidence or lack of evidence that had been presented at trial, and to focus solely on whether, in light of that evidence or lack of evidence, the jury was convinced beyond a reasonable doubt that the defendant was guilty of the crimes with which he was charged.** The jury correctly was instructed that the government has no duty to employ in the course of a single investigation all of the many weapons at its disposal, and that the failure to utilize some particular technique or techniques does not tend to show that a defendant is not guilty of the crime with which he has been charged.

*Id.* at 52–53 (emphasis added).

evidence might have made the discharge of the jury's duty easier. **That having been said, we stress that the salutary effect of the instruction is found in the advisement that the absence of such evidence should be factored into the juror's determination of whether the State has shouldered its burden if, *and only if,* the absence of such evidence, itself, creates reasonable doubt.** The absence of evidence, available to the State, may not, *ipso facto,* constitute reasonable doubt. **The risk is greatest that such an instruction will run afoul of the prohibition against relieving the State of its burden where the instruction is predominant in the overall instructions and its relation to the reasonable doubt standard unclear. Consequently, the preferable practice is for the court's instruction to be promulgated in conjunction with the explication of the State's burden to prove the defendant guilty beyond a reasonable doubt.**

*Id.* at 570–71, 922 A.2d 620 (emphasis in original).

Thereafter, the Court of Appeals issued its decisions in *Atkins* and *Stabb.* The opinions in those two cases "did not overrule explicitly the holding in *Evans,* but created a new basis for evaluating the giving of 'anti-CSI effect' jury instructions," by establishing that instructions like those given in *Evans, Atkins,* and *Stabb,* although not improper *per se,* should not be propounded unless the defense does something to warrant the instruction as a curative measure. *See Stabb,* 423 Md. at 462–63, 31 A.3d 922.

### Atkins v. State

In *Atkins,* the defendant was convicted of assaulting three people with a knife during a fight. 421 Md. at 437–39, 26 A.3d 979. The type of knife used in the altercation was critical to both the prosecution and the defense. One of the prosecution witnesses testified that, just before one of the victims was stabbed, "he saw Atkins reach into his pocket and apparently remove something" that the witness could not describe. *Id.* at 438, 26 A.3d 979. Atkins claimed that he used a folding knife from his pocket in self-defense, then threw that knife away.

*Id.* at 439–40, 26 A.3d 979. The State, on the other hand, maintained that Atkins used a 12–inch "Rambo-style" knife, featuring a non-folding six-inch blade, which had been seized from his home after the fight. *Id.* at 439 & n. 3, 26 A.3d 979. Over Atkins' objection, the knife was admitted into evidence. *Id.* at 440, 26 A.3d 979. No scientific or forensic tests were performed on the knife, and there was no testimonial evidence linking it to the assaults. *Id.* at 439, 26 A.3d 979.

Defense counsel cross-examined the police officer who seized the knife about the lack of forensic testing for blood, DNA, or fingerprints on the weapon. *Id.* at 440–41, 26 A.3d 979. At the State's request, over Atkins' objection, the trial court propounded the same "anti-CSI effect" instruction that was given in *Evans,* also at the close of the evidence and before closing arguments. *Id.* at 441–42, 26 A.3d 979.

The Court of Appeals held that the trial court abused its discretion in giving that instruction, because it "was not proper under the facts of the case, was fairly covered in the instructions actually given, and, rather than solving a problem arising from the circumstances of the case, created a problem that unfairly prejudiced the defendant's case." *Id.* at 447, 26 A.3d 979. Writing for the Court, Judge Greene distinguished *Evans* on "multiple" grounds, the last of which was as follows:

> Finally, in *Evans,* **defense counsel gave "robust and vehement closing argument" in addition to extensive cross-examination on the issue of the failure of police to record the transaction.** The trial court stated explicitly that the cross-examination warranted the instruction, and the Court of Special Appeals also relied on the closing argument to justify the use of the instruction. Thus, **the intermediate appellate court viewed the instruction as necessary to correct defense counsel's argument that the State was required to produce certain evidence.** In the present case, defense counsel briefly cross-examined on the issue, but did not argue lack of evidence in closing. **Unlike in *Evans,* where counsel distorted the law, thus requiring a curative instruction, counsel in the present case merely pointed out on cross-examination what proce-**

dures were available but did not incorrectly state the law or the State's burden.

*Id.* at 450–51, 26 A.3d 979 (emphasis added) (citations omitted).

The Court concluded that the "anti-CSI effect" instruction given in Atkins' case improperly relieved the State of its burden of proof and undermined the defense by commenting on the weight of the evidence. *Id.* at 453–54, 26 A.3d 979. The Court explained its decision as follows:

> As discussed above, the foot long, non-folding black knife was the centerpiece of the State's case and thus the instruction was of critical importance. **The primary concern when evaluating whether a trial judge abused his or her discretion in giving this type of instruction is the risk that "such an instruction will run afoul of the prohibition against relieving the State of its burden where the ... relation [of the instruction] to the reasonable doubt standard [is] unclear."** *Evans,* 174 Md.App. at 571[, 922 A.2d 620]. **This case exemplifies that risk; the instruction as worded effectively undermined the defense theory of self defense, and relieved the State of its burden to prove guilt beyond a reasonable doubt.**
>
> \* \* \*
>
> **[D]efense counsel had every right to inquire about steps the State undertook to connect the defendant and the particular knife found in Atkins's home to the crime. As we have held previously, a defendant has the right to raise a defense based on the lack of evidence presented by the State.** *Sample v. State,* 314 Md. 202, 207, 209 [550 A.2d 661] (1988). **We stated in** *Sample* **that when "the State has failed to utilize a well-known, readily available, and superior method of proof to link the defendant with the criminal activity, the defendant ought to be able to comment on the absence of such evidence."** *Sample,* 314 Md. at 207 [550 A.2d 661] (1988) (interpreting *Eley v. State,* 288 Md. 548 [419 A.2d 384] (1980) (which held that the trial court erred "in precluding counsel from argu-

ing the logical inferences from the facts and gaps in [the] evidence," *Eley,* 288 Md. at 551 [419 A.2d 384], and that under the circumstances, "it is not unreasonable to allow the defendant to call attention to [the State's failure to produce fingerprint evidence]," *Eley,* 288 Md. at 555 [419 A.2d 384])). In order to probe into the utility of scientific testing to connect the knife introduced by the State to the crimes charged, defense counsel engaged in cross-examination of the detective, asking whether the police department was capable of looking for skin cells or blood on the knife, and whether such testing was performed in this case. **The examination was a legitimate, brief, and reasonable inquiry into the connection between the knife and the crime**....

**The instruction did not adequately protect Atkins's right to a fair trial because the instruction invaded the province of the jury and constituted commentary on the weight of the evidence, which comment was improper.** As stated by Atkins, "[i]t was the jury's function to determine what inferences were to be drawn from the police [officer's] failure to test the knife for DNA evidence. But the trial judge usurped this role." **Basically, the instruction directed the jury to ignore the fact that the State had not presented evidence connecting the knife to the crime, implying that the lack of such evidence is not necessary or relevant to the determination of guilt, and to disregard any argument by defense to the contrary.** In the words of Petitioner's counsel at oral argument before this court, "the instruction effectively plugged a hole in the State's case."

*Id.* at 451–53, 26 A.3d 979 (emphasis added) (footnote and some citations omitted) (alterations in original).

The Court of Appeals "emphasize[d] that our conclusion that the instruction as given was invalid is based on the particular facts in this case, and we do not hold that an investigative techniques instruction would never be proper." *Id.* at 454, 26 A.3d 979. Citing *Evans,* the Court stressed that "the key to producing a valid jury instruction is ensuring that

the State is properly held to its burden, and any instruction regarding what the State must produce in proving its case must be properly related to the reasonable doubt standard." *Id.* at 454, 26 A.3d 979.

In a concurring opinion joining in "the judgment and most of the reasoning of the Majority," Judge Harrell, joined by Judges Battaglia and Murphy, wrote "separately to consider a broader array of situations where 'anti-CSI effect' or 'no duty' instructions may be appropriate, beyond more than the modest discussion in the Majority opinion." *Id.* at 456, 26 A.3d 979 (Harrell J., concurring) (footnote omitted). After reviewing comparable cases from federal and other state courts, Judge Harrell observed that

"[n]o duty" instructions recognize that **defense tactics emphasizing repeatedly—often to the point of chastising law enforcement officials—the failure to use specific investigative techniques may influence jurors inappropriately.** As the colloquial name of this type of instruction implies, "no duty" instructions are meant to inform the jury that law enforcement "was under no duty" to gather certain evidence, such as fingerprints, or DNA, **in cases where the defense implies improperly that the government was under such a duty. Further, when a defendant argues or implies that a failure to undertake specific scientific tests or procedures violated standard law enforcement procedures, or that such procedures would have produced evidence favorable to the defendant, a "no duty" instruction has been held to be appropriate.... The government, therefore, is not entitled to this instruction every time the defense points out that there is a lack of forensic evidence in a case.** Without an anchor in the evidence—showing that police policy was not violated in failing to utilize such investigative techniques—or "defense argument that the instruction is intended to counter, the 'no duty' instruction runs the risk of confusing the jury by seeming to contradict the admonition in the reasonable doubt instruction...."

*Id.* at 464–65, 26 A.3d 979 (Harrell J., concurring) (emphasis added) (citations omitted).

### Stabb v. State

Three months after the *Atkins* decision, the Court of Appeals again reversed a criminal conviction based on an improperly given "anti-CSI effect" instruction in *Stabb,* with Judge Harrell writing the opinion for a unanimous Court. Stabb was convicted of inappropriately touching the seven-year-old daughter of his ex-girlfriend by putting his hand on her "private" inside her underwear. 423 Md. at 457, 31 A.3d 922. During the trial, defense counsel elicited testimony from the social worker who interviewed the child that the girl was not referred for a medical examination because she "did not disclose that penetration occurred." *Id.* at 458, 31 A.3d 922. When defense counsel "pressed" the social worker "about the potential for obtaining any kind of physical evidence had a SAFE [Sexual Assault Forensics Exam] been performed," the witness testified "that there was no possibility of the continued existence . . . of physical evidence as it had been several days between the assault and [the child's] interview," and the child had bathed and changed clothes during that interim. *Id.* at 458–59, 31 A.3d 922.

Stabb testified on his own behalf, denying the charges. *Id.* at 461, 31 A.3d 922. In addition, he presented testimony (1) from the victim's mother and grandmother indicating that appellant's relationship with the victim's mother had soured shortly before the incident, (2) from an alibi witness, and (3) from one of the police officers involved in the case admitting that DNA evidence might be recoverable from skin-to-skin contact, but describing the prospect of obtaining such evidence in this instance as "very minimal." *Id.* at 459–62, 31 A.3d 922 (internal quotations omitted).

Over defense objection, at the close of the evidence and before closing arguments, the trial court propounded the same "anti-CSI effect" jury instruction that was given in *Evans* and *Atkins.* *Id.* at 460–61, 31 A.3d 922. In closing argument, defense counsel "covered briefly" the lack of physical evidence,

but focused her reasonable doubt arguments "heavily on the State's reliance on a single child witness and the inconsistent recollections of the investigating officers and the State's other witnesses." *Id.* at 462, 31 A.3d 922.

The Court of Appeals held "that, although we remain persuaded that 'anti-CSI effect' jury instructions are not improper *per se*, under the facts of this case, the trial court abused its discretion in providing essentially a preemptive jury instruction that there was no legal requirement for the State to utilize any specific investigative technique or scientific test to prove its case." *Id.* at 462–63, 31 A.3d 922 (internal quotations omitted). "Without resolving whether the form of the jury instruction given in the present case was a correct statement of the law," the Court concluded that "it nonetheless was given improperly in the circumstances of the case." *Id.* at 470, 31 A.3d 922.

The Court observed that "[t]he pertinent jury instruction at issue in the present case is identical to the instruction given in *Atkins* " and that, although the lack of scientific evidence was not as "critical" to Stabb's defense as it was to Atkins's defense, "[n]onetheless, [it] was an integral part of the defense's theories." [4] *Id.* at 470–71, 31 A.3d 922. The Court concluded that, as in *Atkins,* the instruction was improperly given, explaining:

> **Another problem with the "anti-CSI effect" jury instruction in the present case is that it was given preemptively, i.e., before any explicit argument by the defense on the absence of DNA or fingerprint testing of Kaylen J. or her clothing. . . . Defense counsel argued that it would be**

---

4. In *Atkins*, "the 'missing' forensic or other evidence connecting the alleged weapon to the crime was 'of critical importance' to the State's case" because it linked "the foot-long knife recovered from Atkins's night stand with the crime," whereas, "the lack of forensic evidence, i.e., DNA or fingerprints corroborating Stabb's asserted misconduct towards the minor child, may not have been as critical to the strength of the State's case because of the victim's testimony and the circumstantial evidence supplied by the State's other witnesses." *Stabb,* 423 Md. 454, 470, 31 A.3d 922 (2011).

improper to give the jury instruction unless the court needed to cure a "robust and vehement" closing argument that "harped" on the lack of scientific evidence. Defense counsel was correct. **Stabb's defense argued properly and without undue emphasis the lack of corroborating physical evidence of the crime, and questioned Detective Seichepine and Sullivan as to the likelihood of the existence of such evidence and why a SAFE was not performed, but did not "harp" impermissibly on the lack of physical evidence in its case-in-chief or during closing arguments.** In fact, the main thrust of Stabb's defense rested on an alibi theory. His closing arguments focused also on numerous ways the defense contended that the State had failed to satisfy its reasonable doubt burden, only one of which was its failure to perform a SAFE. **When the defense did allude to the lack of corroborating physical evidence, its comments were "legitimate, brief, and reasonable," as in** *Atkins.* **These factors distinguish the present case from** *Evans.*

Further, Stabb did not advance a "missing evidence" argument that implied that "missing" evidence would favor him; rather, counsel alluded to the absence of corroborating physical evidence because the State chose not to administer a SAFE. The State responded, during recross-examination of witnesses and in closing arguments, to defense counsel's implication regarding the lack of a SAFE, i.e., why a SAFE was not administered and the unlikelihood that a SAFE, had it been administered, would have yielded testable DNA or fingerprints. Rebuttal by the State was the proper approach. **When the trial judge injected the pertinent instruction into the jury's calculus, it had more "force and effect than if merely presented by counsel," and could have influenced impermissibly the drawing by the jury of inferences regarding the absence of physical evidence. In giving the "anti-CSI effect" instruction to the jury, the trial court directed effectively the jurors not to consider the absence of a SAFE or corroborating physical evidence. The trial court invaded**

impermissibly the province of the jury deliberations with the given "anti-CSI effect" instruction under the circumstances.

The "anti-CSI effect" jury instruction given, in the circumstances of this case, was improper because it relieved the State of its burden to prove Stabb was guilty beyond a reasonable doubt, invaded the province of the jury, and, thus, violated Stabb's constitutional right to a fair trial. Therefore, we reverse the judgment of the Court of Special Appeals and remand to that court with directions to reverse the judgment of the Circuit Court and remand this case to the Circuit Court for a new trial, consistent with this opinion.

In closing and with a nod to the future, we observe that, because of the currently inconclusive state of the scholarly legal and/or scientific communities' research, taken as a whole, regarding whether such a phenomenon as the "CSI effect" exists, the use of "anti-CSI effect" jury instructions (especially when given preemptively before closing arguments or otherwise improper defense questioning or commentary during trial regarding the absence of scientific evidence as part of the States case) is fraught with the potential for reversible error. To the extent that such an instruction is requested, its use ought to be confined to situations where it responds to correction of a preexisting overreaching by the defense, i.e., a curative instruction.

*Id.* at 471–73, 31 A.3d 922 (emphasis added) (citation and footnote omitted).

### Appellant's Challenge to the "Anti–CSI Effect" Instruction

Appellant contends that the "anti-CSI effect" instruction given here constitutes reversible error because it undermined defense counsel's proper argument to the jury regarding the lack of fingerprint or DNA evidence by allowing the judge, as opposed to the prosecutor, to negate or minimize the lack of scientific evidence. Furthermore,

regardless of the propriety of such a "CSI" instruction generally, the instruction given in this case failed to inform the jury that they should consider the lack of evidence in reaching their verdict. This critical sentence was included in the "CSI" instruction that was approved ... in *Evans v. State,* 174 Md.App. 549 [922 A.2d 620 ] (2007), and in the two cases in which this issue is currently pending in the Court of Appeals [i.e., *Atkins* and *Stabb* ].

The State responds that appellant failed to preserve either of those challenges for appellate review because defense counsel did not argue that the instruction "negated or minimized the lack of scientific evidence," but instead objected only on the ground "that the general instructions on reasonable doubt, amount of proof, number of witnesses, and the like cover that." On the merits, the State argues that "the trial court's delivery of the instruction was not error" under the analytical framework established in *Atkins.*

■ The record here shows that defense counsel did not object to the "anti-CSI effect" instruction given by the trial court on the ground that it failed to include the portion of the instruction given in *Evans, Atkins,* and *Stabb* that advised the jury to consider "all of the evidence *or lack of evidence* " in deciding appellant's guilt or lack of guilt. *See, e.g., Evans,* 174 Md.App. at 562, 922 A.2d 620 (emphasis added). Nor did counsel specifically argue that the instruction improperly undermined appellant's defense by effectively directing the jury to disregard or discount the lack of fingerprint and DNA evidence. Nevertheless, we conclude that appellant's objection provides a sufficient basis for appellate review of the challenged "anti-CSI effect" instruction under the principles articulated in *Atkins* and *Stabb.*

As we have explained, the ultimate lesson from *Atkins* and *Stabb* is that, unless the defense does something during trial to warrant an "anti-CSI effect" instruction as a curative measure "to clarify the State's burden as it relates to specific investigative techniques or scientific tests," a properly given reasonable doubt instruction provides the jury adequate guid-

ance in evaluating whether, in the absence of forensic testing for fingerprint or DNA evidence, the State has met its burden of proving beyond a reasonable doubt all of the elements of the charged crimes. *Stabb,* 423 Md. at 466, 471–72, 31 A.3d 922; *see Atkins,* 421 Md. at 451, 26 A.3d 979. Defense counsel's objection, albeit brief, rested on this same principle that, in the circumstances presented in the instant case, there was no need for the court to give an "anti-CSI effect" instruction. In this respect, appellant's objection was similar to the defense objection in *Atkins* that the pattern instruction on reasonable doubt "sufficiently covered" the objectives of the "anti-CSI effect" instruction, which the Court of Appeals treated as having preserved that jury instruction challenge for appellate review. *Atkins,* 421 Md. at 441 n. 5, 26 A.3d 979.

█ Under the Sixth and Fourteenth Amendments to the United States Constitution and Articles 21 and 23 of the Maryland Declaration of Rights, criminal defendants have the right to require the State to prove guilt beyond a reasonable doubt and the right to a fair trial, which includes the right to have "trial judges refrain from making statements that may improperly influence the jury." *Savoy v. State,* 420 Md. 232, 246, 22 A.3d 845 (2011) ("The Due Process Clause of the Fourteenth Amendment to the United States Constitution requires the State to prove every element of an offense charged beyond a reasonable doubt."); *Stabb,* 423 Md. at 463–64, 31 A.3d 922. Viewed through the analytical framework established by *Atkins* and *Stabb,* the issue in this appeal is whether the trial court erred in giving an "anti-CSI effect" instruction in the circumstances presented here, so that it improperly relieved the State of its burden to prove appellant guilty beyond a reasonable doubt and invaded the province of the jury by directing it to disregard or discount appellant's defense of a lack of forensic evidence.

Although the Court of Appeals has expressly declined to declare the "anti-CSI effect" jury instruction improper *per se, Atkins* and *Stabb* make it clear that such an instruction is not appropriate unless the defense has overreached, for example

by improperly suggesting to the jury that the State was obligated to conduct scientific tests or that the "missing evidence" from such tests would be favorable to the defendant. *See Stabb,* 423 Md. at 462–63, 472–73, 31 A.3d 922. Moreover, the wording of such an instruction cannot pass constitutional muster unless it is "properly related to the reasonable doubt standard." *Atkins,* 421 Md. at 454, 26 A.3d 979. As explained below, we conclude that, as in *Atkins* and *Stabb,* the preemptive "anti-CSI effect" instruction given in this instance was not warranted as a curative measure, and furthermore, that the instruction was flawed in that it did not advise the jury to consider the lack of forensic evidence in determining whether the State proved appellant's guilt beyond a reasonable doubt.

■ At trial, the chief contested factual issue was whether appellant knew that the revolver was in his vehicle. Although the presence of the weapon underneath the driver's seat occupied by appellant provided sufficient evidence for the jury to infer that appellant knew about it,[5] appellant attempted to rebut that inference by pointing out that the passenger had better access to the place where the weapon was hidden, that appellant fully cooperated with Officer Martin during the stop, and that the State failed to test the gun and bullets for fingerprints or DNA evidence that could have shown whether he had handled them. As in *Atkins,* where the issue was whether the untested weapon could be forensically linked to the crime, thereby contradicting Atkins's claim of self-defense, here the issue was whether the untested weapon could be forensically linked to appellant, thereby contradicting appellant's lack of knowledge defense. This lack of forensic evidence was "an integral part of the defense's theory," because it "addressed directly the State's demonstrative evidence introduced against" appellant. *See Stabb,* 423 Md. at 471, 31 A.3d 922; *Atkins,* 421 Md. at 450, 26 A.3d 979.

The record here also resembles *Atkins* and *Stabb* in that appellant's defense did not overreach in a manner that war-

---

5. *See* Part II of our opinion, *infra.*

ranted correction via an "anti-CSI effect" instruction. In cross-examination and closing argument, defense counsel simply pointed out that, although the gun could have been tested for fingerprints or DNA in an effort to obtain evidence of appellant's knowledge of the gun by showing that he had handled it, no such testing was requested or performed. Here, as in *Atkins* and *Stabb,* defense counsel's cross-examination and closing argument regarding the State's failure "to utilize a well-known, readily available, and superior method of proof to link" appellant to the revolver through fingerprints or DNA was a "legitimate, brief, and reasonable" effort to advance appellant's defense that the lack of forensic evidence created reasonable doubt as to whether he knew about the revolver. *Stabb,* 423 Md. at 471, 31 A.3d 922 (quotations omitted); *Atkins,* 421 Md. at 452–53, 26 A.3d 979.

Appellant employed none of the tactics identified by the Court of Appeals as possible grounds for an "anti-CSI effect" instruction. *See Stabb,* 423 Md. at 473, 31 A.3d 922. In contrast to the defense arguments that warranted the "anti-CSI effect" instruction given in *Evans,* here defense counsel did not distort the law by suggesting that the jury could not convict without forensic evidence or that the State was legally required to perform fingerprint or DNA tests. *See Stabb,* 423 Md. at 471–72, 31 A.3d 922; *Atkins,* 421 Md. at 450–51, 26 A.3d 979. Nor did defense counsel suggest that, if such evidence had been obtained, it would have favored appellant. *See Stabb,* 423 Md. at 471, 31 A.3d 922; *Atkins,* 421 Md. at 450–51, 26 A.3d 979. To the contrary, defense counsel merely asserted, in a manner that cannot be characterized as undue "harp[ing]," that the weapon and bullets should have been tested for fingerprints or DNA as a matter of "fairness." *See Stabb,* 423 Md. at 471, 31 A.3d 922. Thus appellant did not engage in the type of improper "defense tactics emphasizing repeatedly—often to the point of chastising law enforcement officials—the failure to use specific investigative techniques" that might have "influence[d] jurors inappropriately" so as to justify an "anti-CSI effect" instruction as a curative measure for defense overreaching. *Atkins,* 421 Md. at 464, 26 A.3d 979

(Harrell, J., concurring); *see Stabb,* 423 Md. at 472–73, 31 A.3d 922.

*Atkins* and *Stabb* teach that, because "a defendant has the right to raise a defense based on the lack of evidence presented by the State," he is entitled to present a "failure to fingerprint" defense via cross-examination and closing argument without automatically triggering the type of preemptive "anti-CSI effect" instruction given in this case. *See Stabb,* 423 Md. at 472–73, 31 A.3d 922; *Atkins,* 421 Md. at 451–62, 26 A.3d 979. In the absence of defense overreaching, the proper approach is to refrain from injecting an "anti-CSI effect" instruction into the jury's calculus, thereby avoiding the risk of undue judicial influence on "the drawing by the jury of inferences regarding the absence of physical evidence," and instead, to leave it up to the State to address the lack of forensic evidence defense through re-direct examination and rebuttal. *See Stabb,* 423 Md. at 472, 31 A.3d 922.

 In addition, even though the Court of Appeals has held that an "anti-CSI effect" instruction in the form used in *Evans, Atkins,* and *Stabb* may not be treated as "improper *per se,"* see, e.g., *Stabb,* 423 Md. at 462–63, we do not reach that same conclusion about the instruction propounded in the case *sub judice.* Unlike the instruction given in all three of those cases, the "anti-CSI effect" instruction given at appellant's trial did not include an advisement that the jury should consider the *lack of* scientific evidence in deciding whether the State had proved appellant's guilt beyond a reasonable doubt. Instead, jurors were effectively told that, in determining whether the State proved beyond a reasonable doubt that appellant knew about the gun in his car, the government was not obligated to conduct fingerprint or DNA tests and that jurors should consider only the evidence presented, which in this instance consisted of testimony by the lone witness at trial, Officer Martin. Because the trial court failed to also instruct that the absence of fingerprint or DNA evidence should be factored into each juror's determination of whether the State had satisfied its burden of proof, the "anti-CSI

effect" instruction ran afoul of the requirement that "any instruction regarding what the State must produce in proving its case must be properly related to the reasonable doubt standard." *Atkins,* 421 Md. at 454, 26 A.3d 979.

The subject instruction, which was given verbatim as requested by the State, created the danger recognized in *Atkins,* that a "jury, discussing the evidence presented and the lack of scientific testing, would remember the trial judge telling them that the State need not present such evidence, and conclude that the State d[id] not have to connect affirmatively the defendant to the [weapon.]" *Id.* Moreover, the adverse impact of this flawed instruction on the jury was heightened by the State's repeated invocation of the instruction in closing argument. The prosecutor reminded the jurors that "the Judge" had told them that they are required to apply the law that the State "is not required to produce fingerprint or DNA evidence." The State's use of "the 'high and authoritative' position of the trial judge" as an offensive sword to undercut appellant's lack of knowledge defense increased the already intolerable risk that the jury would view the instruction as a direction by the trial judge to disregard or discount appellant's defense of the State's failure to fingerprint the gun or test for DNA. *See id.* at 453, 26 A.3d 979.

In sum, because there was no overreaching by defense counsel to justify a preemptive "anti-CSI effect" instruction and the "anti-CSI effect" instruction was fatally flawed for not advising the jury to consider the lack of forensic evidence in evaluating reasonable doubt, we hold that the trial court erred in giving the "anti-CSI effect" instruction. In constitutional terms, the instruction improperly relieved the State of its burden to prove appellant's guilt beyond a reasonable doubt and thus violated appellant's right to have the jury determine the facts. *See Stabb,* 423 Md. at 472, 31 A.3d 922; *Atkins,* 421 Md. at 455, 26 A.3d 979. Given the importance of the lack of fingerprint and DNA evidence to appellant's defense, this error was not harmless. We therefore must reverse appellant's convictions for transporting a handgun on a roadway

and possessing a handgun after conviction for a disqualifying crime.[6]

## II.

### Sufficiency of the Evidence

Appellant argues that "the evidence is insufficient to sustain the convictions for both weapons offenses, "[b]ecause the State did not prove that appellant had knowledge that the gun was in the car and the evidence indicated that the passenger was responsible for the gun's location under the driver's seat." Although we have reversed those convictions, we must address the claim of insufficiency, because appellant cannot be retried for those crimes if the State failed to present sufficient evidence to convict him in the first trial. *See Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) ("The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding."); *In re Petition for Writ of Prohibition,* 312 Md. 280, 313, 539 A.2d 664 (1988) ("[I]f the evidence was insufficient to go to the jury in the first place, double jeopardy principles preclude a new trial.").

Appellate courts evaluate the sufficiency of evidence by determining "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *see Smith v. State,* 415 Md. 174, 184, 999 A.2d 986 (2010). "If the evidence 'either showed directly, or circumstantially, or supported a rational inference of facts which could fairly convince a trier of fact of the

---

**6.** Appellant does not argue that the "anti-CSI effect" instruction tainted the jury's determination of guilt on the motor vehicle violations. We therefore do not address that question. *See, e.g., Diallo v. State,* 413 Md. 678, 692, 994 A.2d 820 (2010) ("[A]rguments not presented in a brief or not presented with particularity will not be considered on appeal.") (citation and quotations omitted) (alteration in original).

defendant's guilt of the offenses charged beyond a reasonable doubt[,]' then we will affirm the conviction." *Bible v. State,* 411 Md. 138, 156, 982 A.2d 348 (2009) (quoting *State v. Stanley,* 351 Md. 733, 750, 720 A.2d 323 (1998)). "Because the fact-finder possesses the unique opportunity to view the evidence and to observe first-hand the demeanor and to assess the credibility of witnesses during their live testimony, we do not re-weigh the credibility of witnesses or attempt to resolve any conflicts in the evidence." *Smith,* 415 Md. at 185, 999 A.2d 986. Thus, "[w]e defer to the jury's inferences and determine whether they are supported by the evidence." *Id.*

Both of appellant's weapons convictions were for statutory offenses. In Maryland, "[a] person may not possess a regulated firearm if the person ... has been convicted of a disqualifying crime." Md.Code (2003), § 5–133 of the Public Safety Article. In addition, "a person may not ... knowingly transport a handgun, whether concealed or open, in a vehicle traveling on a road or parking lot generally used by the public." Md.Code (2002), § 4–203(a)(1)(ii) of the Criminal Law Article ("C.L.").

To obtain convictions for both of these crimes, the State had to prove that appellant was aware of the presence of the gun in his vehicle. The possession charge requires an affirmative showing of knowledge in order to establish appellant's dominion and control over the weapon. *See generally Neal v. State,* 191 Md.App. 297, 316, 991 A.2d 159, *cert. denied,* 415 Md. 42, 997 A.2d 792 (2010) ("Because a person 'ordinarily would not be deemed to exercise "dominion or control" over an object about which he is unaware,' knowledge of the contraband's presence is a prerequisite to the exercise of dominion and control.") (quoting *Dawkins v. State,* 313 Md. 638, 649, 547 A.2d 1041 (1988)). For the transporting charge, however, "there is a rebuttable presumption that a person who transports a handgun under [C.L. § 4–203(a)(1)(ii) ] transports the handgun knowingly." C.L. § 4–203(a)(2).

Appellant contends that the evidence is insufficient to convict him of these offenses, because of Officer Martin's

testimony that appellant denied knowledge of the gun and freely admitted the traffic violations, and the reasonable inference that the gun was in a location where "it would have been natural for a passenger" to place it but "awkward for someone sitting in the" driver's seat to do so.

Appellant's argument ignores the statutory presumption that he knowingly transported the gun found in his vehicle. C.L. § 4–203(a)(2). This presumption, although rebuttable, provided a sufficient evidentiary basis for appellant's transporting conviction.

Regarding the possession charge, under Maryland law, "knowledge of the contents of the vehicle can be imputed to the driver of the vehicle." *State v. Smith,* 374 Md. 527, 550, 823 A.2d 664 (2003). The Court of Appeals has held that "the status of a person in a vehicle who is the driver, whether that person actually owns, is merely driving or is the lessee of the vehicle, permits an inference, by a fact-finder, of knowledge, by that person, of contraband found in that vehicle." *Id.* Such an inference of knowledge may be drawn even though there was a passenger in the vehicle who arguably had equal access and a greater evidentiary nexus to the weapon. For example, in *Smith,* the undisputed evidence that Smith was the driver of a leased car was sufficient to establish his knowledge of a gun found in the trunk, even though the weapon was covered by a jacket belonging to one of two passengers and was not tested for fingerprints. *Id.* at 544–45, 558–59, 823 A.2d 664. When, as in this case, the contraband is discovered under the driver's seat within appellant's reach, such an inference of knowledge may be stronger. *Cf. Larocca v. State,* 164 Md. App. 460, 476, 883 A.2d 986 (2005) (en banc) (evidence that marijuana was found "immediately underneath the [driver's] seat in a small car, in arm's reach, where it was readily accessible to him" supported an inference that driver knew about its presence). Therefore, the jury could infer that appellant knew about the weapon found in his vehicle based on his status as the driver and owner of the vehicle, as well as the location of the weapon underneath his seat.

Because the State presented sufficient evidence to convict appellant of transporting a handgun on a roadway and possessing a handgun after a disqualifying crime, appellant may be retried on those charges. We shall therefore remand for a new trial on those two counts.

**CONVICTIONS FOR TRANSPORTING A HANDGUN ON A ROADWAY (COUNT ONE) AND POSSESSING A HANDGUN AFTER CONVICTION OF A DISQUALIFYING CRIME (COUNT TWO) REVERSED. JUDGMENTS AFFIRMED IN ALL OTHER RESPECTS. CASE REMANDED TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR A NEW TRIAL. COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY.**